PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

# United States District Court

| District | OF MASSACHUSETTS |
|---|---|

| Name | LUIS RIVERA | Prisoner No. W-52832 | Case No. |
|---|---|---|---|

| Place of Confinement |
|---|
| MCI-CEDAR JUNCTION<br>POST OFFICE BOX 100<br>SOUTH WALPOLE, MA 02071 |

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| LUIS RIVERA | V. DAVID NOLAN, SUPERINTENDENT |

The Attorney General of the State of: MASSACHUSETTS (THOMAS REILLY)

04-12717 RCL

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  HAMPDEN COUNTY SUPERIOR COURT, HALL OF JUSTICE, 50 STATE STREET, SPRINGFIELD, MA 01102

2. Date of judgment of conviction  JUNE 29, 1992

3. Length of sentence  2 NATURAL LIFE SENTENCES (NO PAROLE), 4-5 ON AND AFTER

4. Nature of offense involved (all counts)  2 COUNTS FIRST DEGREE MURDER, UNLAWFUL CARRYING OF A FIREARM.

5. What was your plea? (Check one)
   (a) Not guilty  ☒
   (b) Guilty  ☐
   (c) Nolo contendere  ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☒
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☐   No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒   No ☐

RECEIPT # _____
AMOUNT $ 500
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. M.E.
DATE 12/29/04

(2)

9. If you did appeal, answer the following:

    (a) Name of court __SUPREME JUDICIAL COURT__

    (b) Result __JUDGMENT AFFIRMED__

    (c) Date of result and citation, if known __FEBRUARY 13, 1997 (424 MASS. 266)__

    (d) Grounds raised __SEE SJC'S DECISION (ATTACHED HERETO)__

    (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

        (1) Name of court __N/A__

        (2) Result __N/A__

        (3) Date of result and citation, if known __N/A__

        (4) Grounds raised __N/A__

    (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

        (1) Name of court __SUPREME JUDICIAL COURT__

        (2) Result __CERTIORARI WAS DENIED ON 10/13/1998__

        (3) Date of result and citation, if known __RIVERA V. MASSACHUSETTS, ___ U.S. ___ (19__)__

        (4) Grounds raised __1. WHETHER DEFENDANT WAS DENIED A FAIR TRIAL BY THE COMMONWEALTH'S INTERFERING WITH INTERVIEWING OF COMMONWEALTH'S WITNESS AND DEFENSE ATTORNEY; 2, WHETHER DEFENDANT WAS DENIED HIS RIGHT TO COUNSEL AND TO REMAIN SILENT.__

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☒    No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court __UNITED STATES DISTRICT COURT__

        (2) Nature of proceeding __HABEAS CORPUS PETITION__

        (3) Grounds raised __1 ERRONEOUS DENIAL OF MOTION TO SUPPRESS PETITIONER'S STATEMENTS; 2, ERRONEOUS DENIAL OF WITNESSES; 3, ERRONEOUS ADMISSION OF PREJUDICIAL EVIDENCE; 4, IMPROPER CLOSING STATEMENTS BY PROSECUTOR. SUPRA__

(3)

AO 241 (Rev. 5/85)

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐     No ☒

    (5) Result _____

    (6) Date of result _____

(b) As to any second petition, application or motion give the same information:

    (1) Name of court    HAMPDEN SUPERIOR COURT

    (2) Nature of proceeding    NEW TRIAL MOTION

    (3) Grounds raised: 1. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY OMISSION OF MERITORIOUS APPELLATE GROUNDS ON DIRECT APPEAL; 2. CONVICTION UNLAWFULLY OBTAINED DUE TO TWO RELATED MISTATEMENTS OF PROOF BEYOND A REASONABLE DOUBT IN PROSECUTOR'S CLOSING ARGUMENT AND JURY INSTRUCTIONS; 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO OBJECT AND FAILURE TO CALL NECESSARY WITNESS FOR DEFENSE; AND 4. THE CONVICTION WAS UNLAWFULLY OBTAINED BY PROSECUTOR'S KNOWING AND DELIBERATE PRESENTATION OF FALSE TESTIMONY AND CONCEALMENT OF EXCULPATORY EVIDENCE, WHICH VIOLATED PETITIONER'S SIX AND FOURTEENTH AMENDMENT RIGHTS.

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐     No ☒

    (5) Result    NEW TRIAL MOTION DENIED

    (6) Date of result    NOVEMBER 20, 2003 (See SJ-2004-0338, denied 12/14/2004)

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
    (1) First petition, etc.      Yes ☒     No ☐
    (2) Second petition, etc.      Yes ☒     No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.
    Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

(4)

AO 241 (Rev. 5/85)

    For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

    Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(h) Denial of right of appeal.

A.     Ground one: _____

**SEE ATTACHMENT**

Supporting FACTS (state *briefly* without citing cases or law) _____

**SEE ATTACHMENT**

B.     Ground two: _____

**SEE ATTACHMENT**

Supporting FACTS (state *briefly* without citing cases or law) _____

**SEE ATTACHMENT**

C. Ground three: _____

_____ SEE ATTACHMENT _____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____ SEE ATTACHMENT _____

_____
_____
_____
_____
_____

D. Ground four: _____

_____ SEE ATTACHMENT _____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____ SEE ATTACHMENT _____

_____
_____
_____
_____
_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

N/A

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
   Yes ☐    No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

   (a) At preliminary hearing    ALAN J. BLACK, 1383 MAIN STREET, SPRINGFIELD
   MA. 01103

   (b) At arraignment and plea    (SAME AS ABOVE)

(6)

(c) At trial _____(SAME AS ABOVE)_____

(d) At sentencing _____(SAME AS ABOVE)_____

(e) On appeal _____ JAMES A COUTURE, 10 SOUTH MAIN STREET, P.O. BOX 63, BELCHERTOWN, MA 01007

(f) In any post—conviction proceeding ____PRO SE____

(g) On appeal from any adverse ruling in a post—conviction proceeding ____PRO SE____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?
Yes ☒    No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐    No ☒
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐    No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____PRO SE_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

__DECEMBER 20, 2004__
     (date)

_____[signature]_____
Signature of Petitioner

(7)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LUIS RIVERA,                )
                            )
    Petitioner,              )
                            )
    v.                       )    Civil Action No. _____
                            )
DAVID NOLAN,                 )
                            )
    Respondent.              )

04-12717 RCL

PETITION FOR HABEAS CORPUS
ATTACHMENT

A.  Ground One:  The convictions were unlawfully affirmed through the non-strategic omission of meritorious grounds from direct appeal by incompetent and ineffective appellate counsel in violation of petitioner's Sixth and Fourteenth Amendment rights and rights secured under Article 12 of the Massachusetts Declaration of rights.

Supporting facts:  Although for years prior to petitioner's 1992 trial the case law in Massachusetts made clear that the errors asserted in ground two and three of this petition warranted relief from conviction, appellate counsel on direct appeal omitted these meritorious grounds from his brief, thereby causing petitioner the loss of an otherwise available substantial ground of defense and forcing him to have to seek SJC gatekeeper permission to bring these appellate grounds to the full bench.  These grounds, particularly when viewed under the collective error standards, were significantly stronger than the grounds actually raised by appellate counsel, and more likely to result in the reversal of the convictions at issue.  Due to appellate

counsel's ineffectiveness, the second and third grounds raised herein could not be brought in petitioner's first habeas corpus petition.

Specifically, appellate counsel's failure to argue on direct appeal that the prosecutor's mistatement of the burden of proof during his closing argument was prejudicial, and trial counsel ineffective for not objecting thereto and seeking a mistrial, curative instructions or other remedial measures, constituted ineffective assistance of appellate counsel. Appellate counsel's failure to argue on direct appeal that the trial judge's exacerbation of the prosecutor's mistatement of the burden of proof, by his erroneous instruction on the issue, also warranted appellate relief, constituted ineffectiveness of appellate counsel.

Appellate counsel's failure to argue on direct appeal that trial counsel was ineffective for failing to object to the mistatement of the burden of proof by the prosecutor, and the incorrect definition of same by the trial judge, as well as trial counsel's non-strategic failure to prepare defendant to testify, to interview witnesses and to call the state's main witness's mother to testify, constituted ineffectiveness of appellate counsel as well.

B.  Ground Two: The convictions were unlawfully obtained by two related mistatements of proof beyond a reasonable doubt in prosecutor's closing argument and in the jury instructions, in violation of the Sixth and Fourteenth

Amendments and Article 12 of the Massachusetts Declaration of rights.

Supporting Facts: Because the prosecutor during closing statements mistated the burden of proof, and the trial judge compounded the error by himself giving an incorrect definition of what constitutes proof beyond a reasonable doubt, petitioner received an unconstitutional trial in violation of rights secured to him by the Sixth and Fourteenth Amendments to the United States Constitution and Article 12 of the Massachusetts Declaration of rights.

C.   Ground Three: The conviction was unlawfully obtained through multiple non-strategic omissions by incompetent ineffective counsel at trial in violation of the Sixth and Fourteenth Amendments and Article 12 of the Massachusetts Declaration of rights.

Supporting Facts: Through trial counsel's non-strategic failure to object to the improper and prejudicial mistatement of the burden of proof by the prosecutor during his closing, and the exacerbation of the error by the trial judges who gave an incorrect and prejudicial definition of proof beyond a reasonable doubt, as well as his failure to prepare the defendant to testify, to interview witnesses and to call the main state witness's mother to testify that he was with her at the time of the alleged crimes, trial counsel rendered ineffective assistance in violation of petitioner's Sixth and Fourteenth Amendment rights and Article 12 of the Massachusetts Declaration of rights.

D.      Ground Four:   The conviction was unlawfully obtained by the prosecution's knowing and deliberate presentation of false testimony and concealment of exculpatory evidence in violation of the Fourteenth Amendment and Artikcle 12 of the Massachusetts Declaration of rights.

Supporting Facts:   Because the prosecutor knowingly and deliberately presented false testimony to the jury and concealed evidence that was clearly exculpatory in nature (i.e. a bail releease deal with the key prosecution witness who was a co-defendant in the case), the convictions at issue were unlawfully obtained in violation of rights secured to petitioner by the Fourteenth Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of rights. See affidavit of Jose Pacheco, and attached New Trial Motion, incorporated herein by references.

For the foregoing reasons, the petition for writ of habeas corpus should be granted.

Dated: December 20, 2004

Respetcfully submitted,

*Luis F. Rivera*
Luis Rivera, pro se
Box 100
South Walpole, MA 02071

### VERIFICATION

I Luis Rivera declare under the pains and penalties of perjury that the foregoing is true and correct to the best of my personal knowledge.

Dated: December 20, 2004

*Luis F. Rivera*
Luis Rivera

promulgated by the body's officers. *Monell, supra* at 659, 98 S.Ct. at 2019–20.

The plaintiff alleges that the city did not properly maintain its cells. The plaintiff references a Report of the Special Commission to Investigate Suicide in Municipal Detention Centers, Suicide in Massachusetts Lockups 1973–1984 (1984), that indicates that "a rash of suicides" has occurred in municipal detention centers.[8]

The decedent's suicide was the first to occur at the South |264Boston District Court, or at any District Court, in over ten years. While suicides had occurred at other detention centers owned by the city, the absence of suicides in the District Courts is counter to any "deliberate indifference" or city policy of ignoring suicides in the holding cells of the District Courts.[9]

In *Bowen, supra*, the court concluded that the failure to modify a cell door in a lockup to eliminate the possibility that a detainee could hang himself was, at most, negligence and not deliberate indifference. *Id.* at 18. Without evidence that "an atrociously high number of detainees committed suicide" the court said that the municipality should not be considered "wilfully blind[ ]" to a particular pattern of suicides. *Id.* at 19.[10]

The regulations cited by the plaintiff requiring overhead bars to be covered[11] applies only to "cells," as defined by 105 Code Mass. Regs. § 470.020 and not to "holding cells," which is where the decedent hanged himself. Even if the city were under an obligation to follow the regulations and had |265failed to do so, this failure alone would not amount to deliberate indifference. Additional evidence would be required to raise the city's actions to the level of a policy of "deliberate indifference." Such evidence has simply not been offered by the plaintiff. See *supra* at 790. The city was entitled to summary judgment.

*Judgments affirmed.*



424 Mass. 266

|266COMMONWEALTH

v.

Luis Fernando RIVERA, Jr.

Supreme Judicial Court of Massachusetts, Hampden.

Argued Nov. 7, 1996.

Decided Feb. 13, 1997.

Defendant was convicted in the Superior Court Department, Hampden County, Daniel

---

8. The defendants objected to the use of the report based on hearsay and other grounds. On the result we reach, we need not decide whether the report was properly before the judge. We assume, without deciding, that the report was acceptable, and the judge did not err in not striking it.

9. The difference in functions and conditions between municipal detention centers and District Court holding cells do create a relevant distinction. Local lockups are under the jurisdiction of the city or its police, while the District Court lockups are under the jurisdiction of the Commonwealth where those detained are held for very short periods of time.

10. The plaintiff points the court toward a Federal case from the Eleventh Circuit to buttress her argument and show an example where courts have held that a municipality was "deliberately indifferent" to a rash of suicides. *Tittle v. Jefferson County Comm'n*, 966 F.2d 606 (11th Cir. 1992).

In *Tittle*, the court overturned a motion for a summary judgment entered against a plaintiff who had sued in circumstances very similar to those that occurred here. The stark difference that separates the case at bar from the *Tittle* case is the predominance of suicide attempts and actual suicides at the Jefferson County jail where Tittle's suicide occurred. Over a period of approximately two years, twenty-nine attempts at suicide by hanging were made in one jail, the majority of which were made from an iron bar across the window in each cell. The decedent's suicide in *Tittle* had been the third successful suicide in six months using the same method and the same bar across the window.

11. Title 105 Code Mass. Regs. § 470.407 provides as follows: "All *cells* shall have ... a protective covering of high impact, transparent plastic over all bar structures accessible to persons detained in a cell. Holding cells and cells constructed after the effective date of these regulations shall not have any barred structures" (emphasis added).

A. Ford, J., of first-degree murder and unlawful carrying of firearm. Defendant appealed. The Supreme Judicial Court, Abrams, J., held that: (1) determination that defendant had not invoked his *Miranda* rights during booking process was not clearly erroneous; (2) defendant validly waived his *Miranda* rights following booking process; (3) Commonwealth did not impermissibly interfere with or hinder defendant's access to witnesses; (4) evidence regarding drug organization was properly admitted to prove defendant's motive to kill; and (5) trial judge acted within his discretion in refusing to instruct jury that it could consider evidence of police officers' failure to conduct gunpowder residue tests on defendant's hands.

Affirmed.

**1. Criminal Law ⟫414**

Motion judge's determination that defendant had not invoked his *Miranda* rights during booking process was not clearly erroneous, despite booking officer's initial testimony that defendant had replied in negative to officer's question regarding whether he waived his *Miranda* rights; motion judge found credible booking officer's amended testimony that he had never asked defendant about waiver, and defendant had not asked for attorney or been questioned about crimes during booking process. U.S.C.A. Const. Amend. 5.

**2. Criminal Law ⟫1158(4)**

In reviewing judge's determination regarding knowing waiver of *Miranda* rights and voluntariness, Supreme Judicial Court grants substantial deference to judge's ultimate conclusions and will not reject judge's subsidiary findings if they are warranted by evidence. U.S.C.A. Const.Amend. 5.

**3. Criminal Law ⟫412.2(5)**

Even if defendant had invoked his *Miranda* rights during booking process, defendant subsequently validly waived such rights when police officers administered fresh set of *Miranda* warnings to defendant three and one-half hours after completion of booking process, and defendant expressly waived his rights in writing at that time; booking officer had never questioned defendant. U.S.C.A. Const.Amend. 5.

**4. Criminal Law ⟫412.1(4)**

There is no per se rule proscribing resumption of questioning after defendant has invoked his or her right to be free from interrogation; rather, proper inquiry in such circumstances is whether defendant's right to silence or to counsel, once invoked, was scrupulously honored before questioning resumed.

**5. Criminal Law ⟫666.5**

Witnesses' insistence that representative of district attorney's office be present during their interviews with defense counsel and defense investigator was well within their right to impose reasonable conditions on interviews. M.G.L.A. c. 258B, § 3(m).

**6. Criminal Law ⟫666.5**

Defendants are entitled as of right to access to witnesses who are in custody of Commonwealth; that right encompasses opportunity for interview.

**7. Criminal Law ⟫666.5**

Witnesses may grant or refuse interview with defense counsel as they so choose and, if they decide to let defense counsel interview them, they have right to impose reasonable conditions on conduct of interview. M.G.L.A. c. 258B, § 3(m).

**8. Criminal Law ⟫666.5**

Commonwealth did not impermissibly interfere with or hinder defendant's access to certain witnesses by interrupting defense counsel's telephone interview with one witness or by meeting privately with other witness to explain her rights and to convey preference that prosecutor be present during her interview; district attorney provided reasonable explanation for interruption, prosecutor explained to witness that she had right to speak to defense counsel alone and that defense counsel had right to speak to her alone, and any potential for undue influence was removed by judge's colloquy with witnesses.

U.S.C.A.

ibing re-
dant has
ee from
in such
right to
as scru-
ing re-

entative
during
sel and
n their
s on in-

ight to
ody of
ses op-

erview
and, if
erview
onable
G.L.A.

bly in-
ess to
efense
e wit-
r wit-
onvey
luring
l rea-
osecu-
ght to
it de-
alone,
was
esses.

**9. Criminal Law ⇐673(2)**

**Homicide ⇐166(1)**

Evidence regarding drug organization was admissible to prove murder defendant's motive to kill, though defendant was not member of the organization, given that Commonwealth's theory in case was that head of drug organization had ordered killing of victims for wrongs they had committed against organization and that defendant had been hired to carry out that order; chance of prejudice had been minimized by prosecutor's repeated statements that defendant was not member of drug organization and by judge's repetition of special cautionary instructions concerning proper use of the evidence.

**10. Criminal Law ⇐788**

Trial court acted within its discretion in refusing to instruct jury that it could consider evidence of failure of police to test for presence of gunpowder residue on hands of murder defendant and other suspects arrested; judge had specifically permitted defendant to argue failure to test in his closing argument, defense counsel did so, and there was testimony that gunpowder residue test was unavailable in Commonwealth and that had it been available, it would have been unreliable due to lapse of time between murders and arrests.

**11. Criminal Law ⇐788**

Decision whether to instruct jury regarding failure of police to conduct forensic tests lies within discretion of trial judge.

---

James A. Couture, Belchertown, for defendant.

Jane Davidson Montori, Assistant District Attorney, for Commonwealth.

Before WILKINS, C.J., and ABRAMS, LYNCH, GREANEY and MARSHALL, JJ.

ABRAMS, Justice.

Convicted on two indictments charging murder in the first degree and on one indictment charging unlawful |267carrying of a firearm, the defendant, Luis Fernando Rivera, Jr., appeals claiming that: (1) the judge improperly denied his motion to suppress; (2) the Commonwealth improperly interfered with his right to interview witnesses; (3) the judge erred in admitting evidence regarding a drug organization of which the defendant was not a member; (4) the prosecutor made improper prejudicial statements during his closing argument; and (5) the judge erred in refusing to instruct the jury regarding the Commonwealth's failure to test for gunpowder residue. The defendant also asks that we exercise our power under G.L. c. 278, § 33E, to order a new trial. We affirm the convictions and decline to exercise our power under § 33E in favor of the defendant.

The evidence in the light most favorable to the Commonwealth, *Commonwealth v. Salemme*, 395 Mass. 594, 595, 481 N.E.2d 471 (1985), showed that Pedro Ramos, the head of an extensive drug organization in Holyoke, ordered the killing of two persons to avenge wrongs which Ramos believed those persons had committed against him and his operation. One had assisted the police in the preparation for the execution of several search warrants which had led to the seizure of extensive physical evidence and to the arrest of Ramos and several other members of his drug organization.[1]

The evidence warranted the jurors' concluding that a member of Ramos's drug organization planned the murders and hired the defendant to carry out Ramos's order. The girl friend of one of the victims told police about an eyewitness, who, in turn, waived his Miranda rights and gave a detailed statement implicating the defendant and others in the murders. The police arrested the defendant based on this information. The eyewitness[2] said that he was ordered to drive the two victims, the defendant, and a co-defen-

---

1. These events ultimately led to the convictions of Ramos and several others for drug and firearms offenses. See *Commonwealth v. Alvarez*, 422 Mass. 198, 661 N.E.2d 1293 (1996).

2. The eyewitness testified that he was an unwilling participant who drove the vehicle on pain of threat to his and his family's safety.


dant, Iran Diaz,[3] to the scene of the murders. The eyewitness said that the victims were dragged from the vehicle, and that the defendant shot one victim in the chest. That victim died within minutes. The other victim attempted to flee, and Diaz shot him in the back. The victim fell to the pavement but was still alive and trying to crawl away. The defendant alerted Diaz, and Diaz then shot the victim several times.

1. *Motion to suppress.* The defendant claims error in the denial of his motion to suppress a statement made to the police. He argues that the police improperly obtained the statement by questioning him after he had asserted his *Miranda* rights during the booking process.

At the hearing on the motion to suppress, the booking officer who had advised the defendant of the *Miranda* warnings initially said that he had asked the defendant if he understood the warnings and waived them. That officer initially said that the defendant replied in the negative. However, on recall, the officer testified that he had responded incorrectly because he had been confused about the questions. The officer then amended his testimony, stating that he never had asked the defendant about waiver, and therefore had marked "no" on the portion of the booking sheet regarding a *Miranda* waiver. That procedure was meant to indicate that the booking officer never obtained a waiver from the defendant. The officer explained that it is not the responsibility of booking officers to interrogate defendants or to ask them if they wish to make statements.

During the booking process, the defendant never asked for an attorney, the defendant was not questioned about the crimes for which he was arrested, and he did not make any statements about the crimes. After the booking process was completed, the defendant was placed into a cell. Three and one-half hours later, other police officers questioned the defendant and obtained the statement at issue. However, before any questioning ensued, these officers first administered a fresh set of *Miranda* warnings, and the defendant expressly waived his rights.

[1] The motion judge found beyond a reasonable doubt that the defendant had knowingly, willingly, and intelligently waived the *Miranda* warnings, and that the statement the defendant made after receiving *Miranda* warnings was voluntary. The judge credited the booking officer's amended testimony and found that the defendant did not assert his rights during the booking process. The defendant claims that the judge's determination was clearly erroneous in light of the discrepancy in the booking officer's testimony. We disagree.

[2] "In reviewing a judge's determination regarding a knowing waiver of *Miranda* rights and voluntariness, we 'grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence.'" *Commonwealth v. Shine*, 398 Mass. 641, 651, 500 N.E.2d 1299 (1986), quoting *Commonwealth v. Benoit*, 389 Mass. 411, 419, 451 N.E.2d 101 (1983). The motion judge specifically determined that the booking officer's amended testimony and the explanation given for the discrepancy was "entirely credible." The question is clearly one of credibility for the finder of fact. We do not substitute our judgment for that of the fact finder. See *Commonwealth v. Mello*, 420 Mass. 375, 384, 649 N.E.2d 1106 (1995).

[3, 4] The motion judge alternatively found that even if the defendant had invoked his rights during the booking process, in the totality of the circumstances, "the passage of time and the fresh set of *Miranda* warnings would be sufficient to create a valid waiver." We agree. As the judge correctly noted, there is no per se rule proscribing the resumption of questioning after a defendant has invoked his or her right to be free from interrogation. See *Michigan v. Mosley*, 423 U.S. 96, 102–103, 96 S.Ct. 321, 325–26, 46 L.Ed.2d 313 (1975); *Commonwealth v. Watkins*, 375 Mass. 472, 479, 379 N.E.2d 1040 (1978). The proper inquiry in such circum-

---

3. Diaz was tried separately and convicted on two indictments charging murder in the first degree and also of unlawfully carrying a firearm. See *Commonwealth v. Diaz*, 422 Mass. 269, 661 N.E.2d 1326 (1996).

stances is whether the defendant's right to silence or to counsel, once invoked, was "scrupulously honored" before questioning resumed. *Mosley, supra* at 104, 96 S.Ct. at 326–27. *Commonwealth v. Atkins,* 386 Mass. 593, 598, 436 N.E.2d 1203 (1982). The motion judge was warranted in concluding that this requirement was satisfied because the booking officer never questioned the defendant, and other officers did so only after three and one-half hours had passed. Those officers had administered a fresh set of *Miranda* warnings, and the defendant had waived his rights in writing. See, e.g., *Commonwealth v. Santo,* 375 Mass. 299, 304, 376 N.E.2d 866 (1978). There was no error.

2. *Right to access to witnesses.* The defendant contends that the Commonwealth impermissibly interfered with his access to three witnesses who testified for the prosecution, thereby infringing on his right to prepare a defense and, in turn, his right to a fair trial. See *Commonwealth v. McMiller,* 29 Mass.App.Ct. 392, 407–409, 560 N.E.2d 732 (1990). For security purposes, the Commonwealth kept secret the addresses of its witnesses, including Pedro Figuero, Yolanda Reyes, and David Soto, ₂₇₀during the pendency of the trial.[4] Arrangements were made to afford the defendant's counsel and investigator the opportunity to communicate and talk with the witnesses by telephone through the district attorney's office.

When telephoned, Figuero told the defendant's investigator that he did not want to speak to defense counsel and the investigator. Reyes met with defense counsel in person at the district attorney's office and initially indicated that she was willing to speak to him and the investigator alone. However, after the prosecutor met privately with Reyes to explain her rights as a witness, Reyes then indicated that she wanted the prosecutor to attend the interview with her. Defense counsel refused to agree to these conditions and left the office without speaking to Reyes. Soto initially spoke to defense counsel over the telephone, answering some questions and refusing to answer others, but shortly after a brief interruption by the district attorney, Soto terminated the interview. We note that while under oath, Soto stated on the record that he was "through answering questions" when the district attorney entered the office.

At defense counsel's request, the trial judge engaged in a colloquy first with Reyes and then with Soto in accordance with *Commonwealth v. Carita,* 356 Mass. 132, 142–143, 249 N.E.2d 5 (1969). The judge clearly communicated to Reyes and Soto that defense counsel's wish was to interview them privately.[5] After the judge had advised them of their rights as witnesses, both ₂₇₁Reyes and Soto indicated that they were willing to speak with defense counsel and his investigator, but only in the presence of a representa-

---

4. On appeal, the defendant does not contest the denial of his motion to compel the production of the current addresses of the Commonwealth's witnesses. There is ample evidence in the record of threats to the safety of these and other witnesses to warrant the court's refusal to order the prosecution to reveal the addresses of its witnesses. See *Commonwealth v. Cobb,* 379 Mass. 456, 469–470, 405 N.E.2d 97, vacated on other grounds sub nom. *Massachusetts v. Hurley,* 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), appeal dismissed, 382 Mass. 690, 414 N.E.2d 1006 (1981).

5. [The judge to Reyes]: "You know I think that [the defendant's] investigator would prefer to speak to you alone because it may be that they want to ask you things that you don't want the other side to know about, so you know that's what they would prefer. Now again, I am not going to order you, I am not going to tell you what to do because it's your choice to make. If you spoke to [the prosecutor] by himself or the police by themselves it may be you might want to think about giving [defense counsel] the same courtesy. But again that is up to you, but I will let you decide what you prefer to do."

[The judge to Soto]: "Now, [defense counsel] has told me that he would like to have some time with you, just to speak with you before you testified. Now, [defense counsel] is working hard on behalf of his client to give him a very good defense and it would be something that he would appreciate, I'm sure, if you would agree to spend some time with him today talking with him, just the two of you.... Now, you don't have to do it. I am not going to order you to do it, but I think in fairness if you are going to speak to [the prosecutor] I am in favor of you speaking to [defense counsel] by himself if you would do that. Now, once again it isn't an order for you to do it, but I ask it because I think it would be fair then to do so for [defense counsel], for a few moments today to give him an interview in preparation for your testimony."

tive of the district attorney's office. Defense counsel then conducted interviews of both witnesses in the presence of a representative of the district attorney's office.

[5–7] It is clear that defendants are entitled as of right to access to witnesses who are in the custody of the Commonwealth. *Commonwealth v. Balliro*, 349 Mass. 505, 516, 209 N.E.2d 308 (1965). That right encompasses the opportunity for an interview. See *Commonwealth v. Campbell*, 378 Mass. 680, 699, 393 N.E.2d 820 (1979). Witnesses may grant or refuse an interview with defense counsel as they so choose. If they decide to let defense counsel interview them, they have "the right to impose reasonable conditions on the conduct of the interview." See G.L. c. 258B, § 3(m).[6] We conclude that Reyes's and Soto's insistence on the presence of a representative of the district attorney's office was well within their right to impose reasonable conditions on the interviews.

[8] Nothing in the record supports the defendant's claim that the Commonwealth impermissibly interfered with or hindered access to these witnesses. Contrast *McMiller, supra* at 407, 560 N.E.2d 732. Although the district attorney did interrupt a telephone call between Soto and defense counsel, the judge accepted the valid and reasonable explanation the district attorney gave on $_{272}$the record for the interruption.[7] Moreover, both the district attorney and the prosecutor later offered to arrange another opportunity for defense counsel to speak with Soto without interruptions. There is no basis for us to conclude the judge erred in his determination.

The defendant also alleges impropriety in the prosecutor's private meeting with Reyes to explain her rights, but the record indicates that the prosecutor's instructions to Reyes were in conformance with G.L. c. 258B, § 3(m), and with S.J.C. Rule 3:08, PF 3(b), as appearing in 382 Mass. 799 (1981).[8] The prosecutor did convey to Reyes his preference to be present at her interview with defense counsel. However, this comment does not rise to the level of hindering access to a witness. The prosecutor clearly explained to Reyes that she had the right to speak to defense counsel alone, and that defense counsel had the right to speak to her alone. It was her choice. Cf. *Commonwealth v. Doherty*, 353 Mass. 197, 211, 229 N.E.2d 267 (1967). There was no evidence to indicate that Reyes's decision was not of her own choosing. Further, in these circumstances, any potential for undue influence was removed by the judge's colloquy with Reyes and Soto.[9] See *Carita, supra* at 142–143, 249 N.E.2d 5.

---

6. General Laws c. 258B, § 3 (m), as appearing in St.1995, c. 24, § 5, provides: "To provide victims a meaningful role in the criminal justice system, victims and witnesses of crime … shall be afforded the following basis and fundamental rights … (m) for victims and witnesses, to be informed of the right to submit to or decline an interview by defense counsel or anyone acting on the defendant's behalf, except when responding to lawful process, and, if the victim or witness decides to submit to an interview, the right to impose reasonable conditions on the conduct of the interview."

7. The district attorney explained that he had not expected defense counsel to conduct the interview in his office where his private notes and materials were on his desk. Rather, the district attorney expected defense counsel to use the telephone in his office merely to determine whether Soto was willing to grant an interview, and, if so, the district attorney anticipated transferring the call to a private conference room for the interview. The record also indicates that, because of the length of the conversation in his office, the district attorney was concerned that threats were being made.

8. Supreme Judicial Court Rule 3:08, PF 3(b), as appearing in 382 Mass. 799 (1981), provides: "A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. It is unprofessional conduct for the prosecutor to advise any person or cause any person to be advised to decline to give to the defense information which he has the right to give. A prosecutor may properly inform such a person that he has no duty to submit to an interview or to answer questions propounded by defense counsel, and may advise him that, if he decides to talk to counsel for the defense and does so, he (except when responding to lawful process) may impose reasonable conditions, such as those designed to ensure his own safety and the accuracy of any recording of his statements."

9. We note that the defendant never asked the judge to engage in a colloquy with Figuero pursuant to *Commonwealth v. Carita*, 356 Mass. 132, 142–143, 249 N.E.2d 5 (1969). In his brief, the defendant appears to make no specific arguments regarding Figuero, other than that defense counsel was not provided unrestricted access to him. We reiterate that Figuero was within his

[9] 3. *Admission of evidence regarding the drug organization.* |₂₇₃The defendant contends that the judge erred in admitting testimonial and physical evidence regarding Ramos's drug organization because the evidence went to Ramos's motive to kill the victims, and not to the defendant's motive. The defendant further argues that, where all parties acknowledged that the defendant was not a member of the drug organization, the judge should have excluded this motive evidence as prejudicial. The admission of this evidence was a proper exercise of the trial judge's discretion. See, e.g., *Commonwealth v. Dunn*, 407 Mass. 798, 807, 556 N.E.2d 30 (1990).

The Commonwealth's theory was that Ramos ordered the killings and the defendant was hired to carry out that order because the victims had allegedly informed the police of Ramos's drug organization, thereby causing the arrest of Ramos and the destruction of his operation. In these circumstances, the defendant's motive was inextricably linked to Ramos's motive for ordering the murders of the victims. See *Commonwealth v. Borodine*, 371 Mass. 1, 8, 353 N.E.2d 649 (1976), cert. denied, 429 U.S. 1049, 97 S.Ct. 760, 50 L.Ed.2d 765 (1977) ("if there is evidence of motive, that evidence is admissible"). The prosecution was entitled to present as full a picture as possible of the events surrounding the alleged crime itself. *Commonwealth v. Bradshaw*, 385 Mass. 244, 269, 431 N.E.2d 880 (1982) ("[w]ithout the challenged evidence, the killing[s] could have appeared to the jury as an essentially inexplicable act of violence"). Moreover, the chance of prejudice was minimized by the prosecutor's repeated statements that the defendant was not a member of the drug organization, and by the judge's repetition of special cautionary instructions concerning proper use of the evidence. See *Commonwealth v. Valentin*, 420 Mass. 263, 270, 649 N.E.2d 1079 (1995); *Dunn*, *supra* at 807, 556 N.E.2d 30.

4. *Closing argument.* The defendant also objects to the prosecutor's use of the evidence regarding Ramos's drug organization during closing argument. Because that evidence was admissible, see section 3, *supra*, the prosecutor was entitled to use it in argument. The prosecutor's remarks were grounded in the evidence and the fair inferences to be drawn therefrom, and therefore there was no error on this ground. |₂₇₄See *Commonwealth v. Marquetty*, 416 Mass. 445, 450–451, 622 N.E.2d 632 (1993); *Commonwealth v. Paradise*, 405 Mass. 141, 152, 539 N.E.2d 1006 (1989).

[10, 11] 5. *Refusal to instruct.* The defendant argues that he was entitled to, but did not receive, a jury instruction that the jurors could consider in their analysis of the evidence the failure of the police to test for the presence of gunpowder residue on the hands of the defendant and other suspects arrested for the murders. The decision whether to instruct the jury regarding the failure of the police to conduct forensic tests lies within the discretion of the trial judge. *Commonwealth v. Cordle*, 412 Mass. 172, 177, 587 N.E.2d 1372 (1992). See *Commonwealth v. Daye*, 411 Mass. 719, 740–741, 587 N.E.2d 194 (1992). The failure of the authorities to conduct certain tests is a permissible ground on which to build a defense. See *Commonwealth v. Bowden*, 379 Mass. 472, 485–486, 399 N.E.2d 482 (1980). However, unlike *Bowden*, the judge did not improperly remove this issue from the jury's consideration. The record establishes that the judge specifically permitted the defendant to argue the failure to test in his closing argument, and defense counsel did so. See *Cordle*, *supra* at 177, 587 N.E.2d 1372 (it is the defense's job to argue to the jury the favorable inferences to be drawn from the deficiencies in police investigation). Contrast *Bowden*, *supra* (reversible error to instruct the jury not to consider lack of scientific tests).

Moreover, there was testimony that the gunpowder residue test was unavailable in the Commonwealth and that had it been available, it would have been unreliable due to the length of time that passed between the murders and the arrest of the defendant and other suspects. There is no evidence to indicate that the Commonwealth's failure to test was unreasonable or calculated to deprive

---

rights as a witness to refuse defense counsel an interview. G.L. c. 258B, § 3(m). See also *Commonwealth v. Doherty*, 353 Mass. 197, 210, 229 N.E.2d 267 (1967).

the defendant of potentially exculpatory evidence. See *Cordle, supra* at 177, 587 N.E.2d 1372. The judge's refusal to comment specifically on the failure of the police to conduct residue tests did not undermine the defense and was not an abuse of discretion. See *id.* at 178, 587 N.E.2d 1372.

6. *G. L. c. 278, § 33E.* We have considered the entire record pursuant to our obligation under G.L. c. 278, § 33E, and conclude that the interests of justice do not require a new trial or the entry of a verdict of a lesser degree of guilt.

*Judgments affirmed.*



424 Mass. 1014

⌊1014⌋**John H. KELLEHER**

v.

**BOARD OF PUBLIC ACCOUNTANCY.**

Supreme Judicial Court of Massachusetts.

Feb. 13, 1997.

Disciplinary action was brought against accountant for deceptive and misleading advertising. State Board of Public Accountancy imposed sanctions, and on appeal, a single justice of the Supreme Judicial Court, Greaney, J., affirmed. Accountant appealed. The Supreme Judicial Court held that accountant's advertisements representing consultants as "contacts" and "professional staff" of firm and listing unlicensed accountants were misleading and deceptive in violation of state regulation.

Affirmed.

1. Accountants ⇐3.1

Accountant's advertisements representing consultants as "contacts" and "professional staff" of firm and listing unlicensed accountants were misleading and deceptive in violation of state regulation. Mass.Regs. Code title 252, § 3.05.

2. Accountants ⇐5

Order to show cause adequately informed accountant of charges against him, where order stated that State Board of Public Accountancy was proceeding against accountant under regulation prohibiting false, deceptive, or misleading advertising, and that accountant's advertisements listed three individuals who were not licensed accountants, misleading public as to form of practice and persons who were partners of firm. Mass. Regs. Code titles 252, § 3.05(1, 2), 801, § 1.01(6)(d).

---

John G. Neylon, Belmont and Kevin D. McGann, Arlington, for plaintiff.

Pierce O. Cray, Assistant Attorney General, for the Board of Public Accountancy.

RESCRIPT.

The plaintiff, John Kelleher, appeals from a decision of a single justice of this court. The single justice affirmed an amended decision of the Board of Public Accountancy (board) to impose sanctions on the plaintiff for false and misleading advertisements. On appeal, the plaintiff claims the single justice erred on two issues.[1] We agree with the decision of the single justice.

[1] The plaintiff argues that the single justice erred in concluding that the advertisements were misleading and deceptive. The advertisements are before us as well as the plaintiff's testimony. Three of the four advertisements listed persons as "contacts" in the firm. However, these individuals, according to the plaintiff, were independent contractors whom he consulted on occasion. One of the these advertisements listed a person's name above the firm name and designation "Certified Public Accountants," though this person was neither an employee nor a licensed public accountant. The fourth advertisement listed seven individuals, other

---

1. The plaintiff also appeals the issues fully discussed in the single justice's memorandum and order. We address only the two issues in which the plaintiff claims error by the single justice.

Superior Court No.(s 1-2247-2251

COMMONWEALTH

V.

Luis Fernando Rivera, Jr.

## AFFIDAVIT TO RECANT FACTS OF TESTIMONY I GAVE AT THE DEFENDANT'S TRIAL

I, Jose Pacheco, do hereby swear and attest that the following facts are true to the best of my knowledge and belief.

I make this affidavit in support of my wish to recant certain facts I gave in my testimony at the trial of the above named defendant.

1.) I am presently an inmate incarcerated at M.C.I. Walpole. My inmate identification number is W70663.

2.) At trial, in June of 1992, I testified that the defendant held a gun to my head because I was running traffic lights and was likely to call attention to my vehicle. The defendant never held a gun to my head or to any other part of my person.

3.) At trial, I testified that I witnessed the defendant shoot Angel Carcano and Guillermo Santiago as I claimed I was at the scene of this crime. I was not at this, or any other crime scene, during the commission of the aforementioned shootings and did not witness any crime being committed by the defendant.

4.) At trial, I testified that I accompanied the defendant to the stated crime scene. I did not, as the defendant dropped me off at my mother's home on Main Street in Holyoke prior to that time.

5.) At trial, in June of 1992, I testified that I did not get a deal or promises for my testimony against the defendant, when in fact I had a verbal agreement with A.D.A. Howard Safford, that after testifying against the defendant that I would be released on low bail and would not face prosecution.

6.) I am willing to testify to the above matters in Court and under oath. Also, I am willing to take a Polygraph if all parties agree.

Signed and sworn under the pains and penalties of perjury on this __7th__ day, of __October__ 2003, at M.C.I. Cedar Junction in __Walpole__, Massachusett.

_Jose Pacheco, W70663_

Witnessed by

_Ethel A Lavally, Notary_
_Comm. exp 10/19/2007_