UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Luis Rivera
        Petitioner

Vs.                                Civil Action No. 2004-12717-RGS

David Nolan
        Respondent

PETITIONER'S MEMORANDUM
SETTING FORTH THE FACTS AND LAW
OF THE PETITIONER'S 2244(d)(1)(D) CLAIM

Now comes the petitioner, Luis Rivera pro-se, in the
above entitled action who respectfully moves this Honorable
Court to consider the petitioner's argument that his
preeviously filed petition should be deemed timely filed
based under 28 U.S.C §§2244(d)(1)(D).

INTRODUCTION

The petitioner Luis Rivera, was convicted of two counts
of first degree murder on June 29, 1992.

On or about January 14, 2003, the petitioner received
the "first" of "three" affidavits through the mail from
Jose Pacheco co-defendant. This "first" affidavit was sign
on November 15, 2002, which consisted of his perjured
testimony during a State Trial regarding the conviction of
this petitioner for the instant matter.

The petitioner received a "second" affidavit on or about
June 12, 2003, this second affidavit consist of an
"Exculpatory Agreement" of a "Bail Release and Dismissal

-2-

of Murder Indictments; this affidavit was sign on May 16, 2003.

The petitioner then received a "third" affidavit some time after October 7, 2003, that consisted of the first two affidavits put together, this affidavit was sign on October 7, 2003.

The petitioner filed his pro-se State Motion For New Trial Mass. Crim. P. Rule 30(b) on November 10, 2003; which was given to the prison officials on November 5, 2003, under the mail box rule. Houston v. Lack, 487 U.S. 266, 270, 276 (1988); Fernandez v. Artuz, 402 F.3d 111, 116 (2nd Cir. 2005); William v. Forg, 139 F.3d 737, 739 (9th Cir. 1998).

In the petitioner's above Motion For New Trial 30(b) he wrote the date it was given to prison officials. See. enclosed Exhibit #7.

The petitioner tried to get the Docket Entries of Mr. Jose Pacheco, by writing the Clerk Of Court in Hampden County on January 2, 2001, but to no avail did he receive the Docket Entries. See... a copy of said letter Exhibit #1.

Had the petitioner been able to acquired the Docket Entries, the petitioner could not have known of the deal because a good part of Mr. Pacheco, Motion To Dismiss took place during a lobby conference with the presiding State Trial Court Judge Spina, and Mr. Pacheco Attorney Charles

-3-

K. Stephenson, and Assistance District Attorney . Safford with out a Court Reporter present. See... Exhibit #6.

On May 19, 2005, the petitioner was transfer from MCI-Cedar Junction to MCI-Norfolk, where he is presently incarce-rated; where the petitioner met up with one of the "other" co-defendant Raymond Rebello regarding this matter, in contrast to the petitioner this other co-defendant (Rebello), had an evidentiary hearing in the same State Trial Court before Justice Constance M. Sweeney (who presiding) regarding the case matter hearing of Mr. Pacheco's recantation testimony this is how the petitioner acquired the Docket Entries of "Key Witness Mr. Pacheco;" via Docket Entries.

The petitioner then immediately filed supplement/amend-ment to the U.S. District Court to show that he had a due process violation regarding Justice Spina's decision involve-ment in the State Superior Court concerning Mr. Pacheco, dismissal of his murder indictment that also involved this petitioner as the co-defendant of, Mr. Pacheco; Justice Spina, was later appointed as a State Supreme Court Justice (SJC), and did make a decision in petitioner's State Motion For Leave To Appeal before Justice Spina, who was sitting during Single Justice Hearing at the (SJC) bench. 1/

_____

1. In light of these facts, Rivera in this instant case at bar respectfully submits for consideration that Justice Spina, should have recused himself sua sponte, eliminating any impropriety. during this petitioner's State Motion For Leave To Appeal, because he was the judge who heard his co-defendant motion to dismiss his murder indicments which was granted by (former State Superior Trial Justice Spina, who was later appointed to the State Supreme Court, and did deny this petitioner motion for leave to appeal his conviction.

Due process was violated because Justice Spina who heard and granted this (alleged) co-defendant of this petitioner motion to dismiss his murder indictment case was granted in State Superior Trial Court, however after Justice Spina, was appointed to State Supreme Court; he failed sua sponte to recuse himself while he was sitting as the Single Justice, upon receiving this petitioner's State Trial Motion For Leave To File An Appeal under Mass. Crim. P. Rule 30(b) was denied; Due process was violated because Judge who heard case in State Court failed sua sponte to recuse himself from hearing Federal Habeas Petition. Clemmens v. Wolfe, 377 F.3d 322, 328 (3rd Cir. 2004).

## Application Of Law To The Facts

The petitioner is on time even if the court consider the first affidavit to be the date on which the factual predicate of this claims could have been discovered through the exercise of due diligence. 28 U.S.C. §§2244(d)(1)(D). The petitioner's New Trial Motion was filed on November

5, 2003. See... Houston v. Lack, supra at page 270, 276.

The petitioner's motion to leave for appeal in the (SJC) before Single Justice Spina, was denied December 14, 2004, which petitioner did not received until December 17, 2004.

The petitioner then filed his habeas corpus petition on December 20, 2004. See... Exhibit #8. See... Fernandez v. Autuz, 402 F.3d 11, 116 (2nd Cir. 2004) Federal Mail Box Rule; Rule applies, and therefore application was properly filed.

-5-

The truthful affidavit of Mr. Pacheco with his Docket Entries and polygraph verified evidentiary hearing truthful testimony of not being present; "an actual innocence based independent due process violation or right to fundamentally fair trial because a State cannot leave a conviction in place after a credible recantation by a key main witness most likely would have change the outcome of the trial. Sanders v. Sullivan, 900 F.2d 601, 602-608 (2d Cir. 1990); (release ordered by writ of habeas corpus when key main witnesses post-conviction affidavit filed admitted the defendant shoot and kill someone). Because "little direct or circumstantial evidence supported either side's version of events. Ellsworth v. Warden, 333 F.3d 1, 9 (1st Cir. en banc 2003), (Torruella, J., concurring) and "the materiality inquiry is a context specific determination." Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 560 (4th Cir. 1999).

The Bail Hearing transcript verification of a deal can support relief from habeas corpus. See... U.S. v. Bagley, 105 S.Ct. 3375 (1985); Giglio v. U.S. 405 U.S. 150,154, 92 S.Ct. 736, 766, 31 L.Ed 2d 104 (1972). In cases in which a defendant claims that the prosecution failed to inform him of a plea agreement between the State, and key material witness, if there is doubt over the existence of the alleged agreement, but substantial evidence, although circumstantial, is present which suggests that the agreement existed, the

courts will resolve the benefit of the doubt in the defendant's favor. Napue v Illinois, 360 U.S. 264, 272, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959) "May have had an effect on the outcome").

However, if dismissal of charges is found to be part of undisclosed deal, then relief must be granted. Ely v. Matesanz, 983 F.Supp.2d 21, 35-45 (D.C. Mass. 1997); Jenkins v. Artuz, 294 F.3d 284, 292-297 (2nd Cir. 2002); William Taylor, 529 U.S. 420, 437 (2000); Phoenix v. Matesanz, 189 F.3d 20, 27-29 (1st Cir. 2001); Banks v. Dretke, 124 S.Ct. 1256, 1268-1269 (2004).

The petitioner's conviction was unlawfully obtained by the prosecutor's knowing and deliberate presentation of false testimony and concealment of a Bail Release Deal with co-defendant Jose Pacheco, whose charges were dismissed as a reward for his perjured testimony in violation of the petitioner's Fourteenth Amendment Right to the U.S. Constitution his U.S. Constitution Six Amendment were also violated and Article 12 of the Massachusetts Declaration Of Right as well.

The affidavit of Mr. Jose Pacheco avers he was released on bail as part of a deal without any objection by the prosecution, Jose Pacheco did not witness the defendant committing any crime, and did not witness the murders [as corroborated by Pacheco's testimony conflicting with crime

-7-

scene evidence and other witnesses]; Pacheco was at his Mother's House in Holyoke Massachusetts, at the time of the murders and was not at the crime scene. Although not admissible into evidence without stipulation of agreement from the prosecutor, Pacheco is willing to take a polygraph test, to verify he did not witness the murders, as is standard practice for Federal Prosecutors and other State Prosecutors to verify or refute a cooperating witnesses story. Schlup v. Delo, 513 U.S. 298; Sawyer v. Whitley, 505 U.S. 333; Murray v. Carrier, 447 U.S. 478, 495. In light of new evidence, it is more likely than not, that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.

Plainly speaking, the actually innocent petitioner Luis Rivera, has only one chance to vindicate himself and the risk of death in prison should he be denied a hearing would constitute a miscarriage of justice.

And if for any reason petitioner's filling dates are proof of his "special diligence" that his 28 U.S.C. §§2244(d) (1)(D) one year time deadline from the time when he first learned of Mr. Pacheco Affivadits are on time.

## Conclusion

For all of reasons stated above, and in the interest of justice, this Honorable Court should deem the petitioner's petition timely pursuant to 28 U.S.C. §§2244(d)(1)(D).

**WHEREFORE:**   petitioner  prays  for  relief,  that  he  will be granted his petition for habeas corpus that was previously timely filed to this Honorable Court, for foregoing reasons as stated herein his eight (8) Memorandum Setting Forth Facts.

Respectfully submitted

*Luis F. Rivera Jr*

Luis F. Rivera, pro-se
MCI-Norfolk
Post Office Box #43
Norfolk, MA 02056-0043

## CERTIFICATE OF SERVICE

I,  Luis  Rivera,  petitioner  pro-se  certifies  on  this Day: _30_ , Month: _11_ , Year: _2007_ ,  submits  a  eight (8) page attached hereto:  Memorandum Setting Forth The Facts And Law pursuant to 28 U.S.C. §§2244(d)(1)(D) that he had filed a timely habeas corpus petition to this Honorable Court. The petitioner has also forwarded a copy of the same via 1st class mail all postage fees prepaid;

To:  Maura D. McLaughlin
     Assistance Attorney General
     One Ashburton Place
     Boston, MA 02018

Signed Under Pains and
Penalties Of Perjury

*Luis F. Rivera*

Luis F. Rivera, pro-se

IN CLERKS FILED
OFFICE
2007 NOV 30  A 10· 03
U.S. DISTRICT COURT
DISTRICT OF MASS.

## EXHIBIT #1

LETTER to the court /w
October 7,2003 Affidavit of Jose Pacheco (**5** page)

Mr. Luis F. Rivera Jr
N.C.C.I Gardner
P.O. Box 466
Gardner, MA. 01440-0466

January 2, 2001.

Clerk Of Courts
Marie G. Mazza, ESQ
Hampden Superior Court
P.O. Box 559
Springfield, MA. 01102-0559

RE: Docket Entries Of Jose A. Pacheco,
A Co-defendant. Indictment NO: 91-2243-46.

Dear Clerk:

I am requesting that a copy of Mr. Pacheco's
Docket Entries. be mail to me at the above address
Thank you for your Time, and Attention to this matter.

Sincerely,

*Luis F. Rivera Jr*

Luis F. Rivera Jr

cc:File

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN COUNTY

SUPERIOR COURT
NO(S) 91–2247–2251

COMMONWEALTH

V.

LUIS FERNANDO RIVERA, JR.

### AFFIDAVIT TO RECANT FACTS OF TESTIMONY I GAVE AT THE DEFENDANT'S TRIAL

I, Jose Pacheco, do hereby swear and attest that the following facts are true to the best of my knowledge and belief.

I make this affidavit in support of my wish to recant certain facts I gave in my testimony at the trial of the above named defendant.

1. I am presently an inmate incarcerated at M.C.I. Concord. My inmate identification number is W 70663

2. At trial, in June of 1992, I testified that the defendant held a gun to my head because I was running traffic lights and was likely to call attention my vehicle. The defendant never held a gun to my head or to any other part of my person.

3. At trial, I testified that I witnessed the defendant shoot Angel Carcano and Guillermo Santiago as I claimed I was at the scene of this crime. I was not at this, or any other crime scene, during the commission of the aforementioned shootings and did not witness any crime being committed by the defendant.

4. At trial, I testified that I accompanied the defendant to the stated crime scene. I did not as the defendant dropped me off at my mother's home on Main Street in Holyoke prior to the time

the alleged crime was said to have been committed.

I am willing to testify to the above matters in court and
under oath.

Signed and sworn to under the pains and penalties of perjury
on this 15th day of November, 2002, at M.C.I. Concord in
Concord, Massachusetts.

JOSE PACHECO          9/15/02

WITNESSED BY          9/15/02





## COMMONWEALTH OF MASSACHUSETTS

**HAMPDEN, ss.**

**SUPERIOR COURT
CRIMINAL NO.**

### COMMONWEALTH

vs.

### RAYMOND RIOS REBELLO

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S SUBSTITUTE MOTION FOR A NEW TRIAL

The defendant Raymond Rios Rebello was convicted in January 1993 of being an accessory before the fact to the deliberately premeditated first degree murders of Angel L. Carcano and Guillermo Santiago. In the appeal of his convictions to the Supreme Judicial Court, the defendant filed a "Substitute Motion For A New Trial" on the grounds that the Commonwealth violated the defendant's confrontation and due process rights by failing to fully disclose inducements to Jose Pacheco, a key prosecution witness, in exchange for his testimony and secondly, his right to a fair trial was violated by the admission of inflammatory and irrelevant evidence of uncharged misconduct. The motion was remanded to me, as the trial judge.

After consideration of the evidence presented during the new trial motion hearing, the submissions of the parties and my knowledge of the trial evidence, the defendant's substituted motion for a new trial is **DENIED** for the reasons stated herein.

## PRIOR PROCEEDINGS

In September 1991, a Hampden County Grand Jury returned indictments against the defendant charging him with being an accessory before the fact to the murders of Carcano and Santiago, as well as conspiring to murder them and being an accessory after the fact to their murders. The Commonwealth entered a nolle prosequi to the accessory after the fact indictments and the remaining indictments proceeded to trial before a jury in August 1992. The jury was unable to reach a verdict on any of the indictments and a mistrial was declared.

In January 1992, the defendant was retried on the accessory before the fact to murder indictments and was found guilty by the jury.[1] Within a week of the conviction, the defendant's trial counsel filed a "Motion for Entry of a Not Guilty Verdict Not Withstanding the Verdict And In The Alternative A Motion For A New Trial." I issued preliminary procedural orders to the parties in preparation for consideration of the motion. As the record reveals, the defendant filed some partial responses but the Commonwealth did not file any. As the procedural morass deepened, I was finally informed that a notice of appeal to the Supreme Judicial Court had been entered on the same day as the Motion for Judgment of Acquittal Not Withstanding the Verdict, thus this court no longer had jurisdiction of the case.

In late 2003, it was brought to my attention that our docket still showed that the case was on appeal, but the usual notifications we receive during the course of an appeal did not appear on the docket. I conducted a status hearing. The defendant's trial counsel claimed that he and the

---

[1] In his first trial, the defendant elected to have the accessory before the fact and the conspiracy indictments tried together. This did not occur in the second trial. The Commonwealth entered a nolle prosequi on the conspiracy indictment after the second trial.

2

## FACTS

From the trial evidence, the jury was warranted in finding that in 1991 the defendant was associated with Pedro Ramos in an extensive illegal narcotics distribution business in the City of Holyoke. Pedro Ramos controlled the business. Ramos and several of his cohorts were arrested on August 15, 1991 on charges of trafficking in cocaine.[3] The defendant was not present during the raids and was not arrested.

The defendant, along with other members of the organization, determined that the victims, Angel Carcano and Guillermo Santiago, had provided information to the police that led to the arrest of Ramos and some of his associates. Carcano and Santiago were, at the most, on the fringes of the Ramos organization. Several days before the murders of Carcano and Santiago, the defendant began to solicit individuals to kill Carcano and Santiago for their perceived treachery. In the ensuing days, the defendant arranged for Israel Diaz and Luis Rivera to carry out the murders. The defendant planned the method and means by which the killings would occur and procured the services of Jose Pacheco to drive the unwitting victims to the execution site.

On August 24, 1991, the killings were carried out in accordance with the defendant's directives. Guillermo Santiago was 32 years old when he was shot to death that day; Angel Carcano was fifteen years old.

Specifically, the trial evidence supporting the jury's verdict revealed that Pedro Ramos and David Soto were partners in a drug organization in New York City before 1991. Ramos

---

[3] See *Commonwealth v. Alvarez*, 422 Mass. 198 (1996) affirming the convictions of Ramos and others for trafficking in cocaine.

drugs were delivered to the Ramos apartment assistants would "work the table", meaning they would process and package the drugs for sale. Once the drugs were packaged, Ramos and Soto distributed them to the managers, who in turn would distribute them to the street dealers known as "pitchers." The pitchers would then sell the drugs to customers on the streets in Holyoke and parts of Springfield. Account ledgers were kept and ultimately discovered by the police.

Discipline within this inherently sordid organization was kept by equally sordid means. It was clear from the evidence that individuals who stole or did not follow orders were violently dealt with by designated enforcers within the organization. The defendant was aware of this and as a "manager" participated in it.

Needless to say, the ever-expanding Ramos organization came to the attention of law enforcement officials. On August 15th, Holyoke police officers searched the Hampden and Pleasant Street apartments pursuant to search warrants. At those locations the police found Pedro Ramos and some of his associates along with six vials of crack cocaine, a wallet belonging to one of the associates present in the apartment, Jeannette Pizarro. The wallet contained a receipt for a safety deposit box located at a New York bank. A search of the box by New York authorities revealed $19,000.00 in cash. A police scanner, numerous pagers and paperwork were also found at the Hampden Street location. In the adjacent 475 Pleasant Street location the officers discovered six loaded semiautomatic handguns and a sawed off shotgun. From a closet in that apartment, they unearthed a leather bag containing 650 vials of crack cocaine as well as a hamper containing 508 vials of crack cocaine and more than $6,500.00 in currency. A drug ledger as well as paraphernalia for the manufacture and distribution of narcotics were also seized from the Pleasant Street location. The defendant's name was found several times on the pages of

6

Pacheco encountered Hernandez, Diaz and the defendant. The three men informed Pacheco that the victims had informed on Ramos to the police. The defendant also told Pacheco that the victims stole items from Ramos's apartment. The defendant told Pacheco that Santiago and Carcano were going to be killed and that Ramos would pay individuals for assisting in killing them. He demanded to know what, if anything, Pacheco knew about the two men. Pacheco asserted at trial that he told the defendant he did not want to be involved and he also claimed that he later warned Santiago that he was a marked man.

However, a couple of days later, Pacheco and the defendant met and Pacheco drove the defendant to the parking lot behind 828 Hampden Street, where the two victims were working on a car. Pacheco testified that he did this so that the defendant could see what the victims looked like. Several hours before the murders Pacheco drove to the intersection of Elm and Hampshire Streets where he encountered Diaz, Rivera and the defendant. Pacheco drove the three men to a local convenience store at the defendant's direction. In the store, the defendant informed Pacheco that Pedro Ramos had ordered that Santiago and Carcano must be killed. The defendant told Pacheco that he would have to "get these people for us" because Pacheco was friendly with Santiago. In his testimony Pacheco claimed that he at first declined but when the defendant threatened to kill him and his family if he did not cooperate, Pacheco agreed to find Santiago and Carcano. He located them at their usual spot in the parking lot of 828 Hampden Street and invited them into his car so they could get "high." Pacheco testified that the victims were drunk and although he tried to warn them of what might happen, neither Santiago nor Carcano took the warning seriously.

Pacheco drove the unsuspecting victims back to the convenience store where Diaz and

8

## 1.   The Defendant's Claim of Violation of His Confrontation and Due Process Rights

The same grand jury that indicted the defendant also indicted Jose Pacheco for the murder of the victims. The murder indictment against Pacheco was dismissed on June 1, 1993 when the court (Spina, J.) allowed Jose Pacheco's motion to dismiss.

The defendant contends that the jurors were never informed that Pacheco had been promised he would receive a benefit for his testimony. That was not the case. The Commonwealth never explicitly or implicitly promised Pacheco that his case would be dismissed. Indeed the Commonwealth objected to the dismissal of the case by the court, although they did not appeal the court's dismissal order. Before trial the Commonwealth did provide an inducement to Jose Pacheco, who was represented by counsel. The inducement was in writing and was provided to the defense. It states:

> Your cooperation will be taken into consideration by this office. Your complete and truthful testimony will benefit you on disposition of your case. It is our intention to treat you fairly.

During trial the prosecutor questioned Pacheco with respect to any understanding he had with the Commonwealth. On this point, the prosecution established that Pacheco was charged with the murders of Santiago and Carcano; that he had testified against other individuals charged as a result of the murder; that he had been released and not held on bail. Pacheco testified that he expected that he would be given consideration by the Commonwealth in exchange for his cooperation. The defendant's trial counsel vigorously cross examined Pacheco as to his motivation to testify including what he might expect from the Commonwealth in exchange for his testimony. Both the prosecutor and trial counsel carefully followed the guidelines established in

10

charges against Pacheco on the grounds of duress. ADA Safford was the prosecuting attorney in the cases arising from the murders of Santiago and Carcano, including the indictments against the defendant. The dealings between Pacheco's attorney and the District Attorney's office fall into two categories. (1) negotiations for Pacheco's cooperation as a witness in return for consideration of the charges against him and (2) the positions taken by Pacheco's counsel and the District Attorney with respect to the motion to dismiss the murder charges against Pacheco.

As to the cooperation inducement, each attorney testified that Mr. Safford promised that Mr. Pacheco's testimony would be taken into consideration in evaluating any potential offer the District Attorney might make on the charges against Pacheco. ADA Safford testified that he knew the District Attorney would in all likelihood insist that Pacheco plead guilty to no less than second degree murder in exchange for his testimony. This was the District Attorney's standing policy and Mr. Safford complied with it by offering only "consideration" in exchange for Pacheco's testimony. Once Pacheco agreed to testify in exchange for "consideration" on the charges against him, Mr. Safford had no occasion to revisit the issue until 1993 when Pacheco's attorney filed a motion to dismiss the indictments.

Attorney Stephenson hoped that Mr. Pacheco's cooperation would bring more than an inducement for Pacheco to plead to second degree murder charges. Mr. Stephenson spoke with District Attorney William Bennett in the early stages of the cases against the various joint venturers, which includes the defendant. The District Attorney informed Mr. Stephenson that he might consider agreeing to Pacheco pleading to second degree murder but to nothing less than that. Mr. Stephenson was insistent that the charges against his client were vulnerable because of what he felt was an almost airtight defense of duress. The District Attorney was unswayed by this

12

the motion to dismiss the two murder indictments and the two conspiracy to commit murder indictments which the grand jury had handed down against Mr. Pacheco.

My role is not to review Judge Spina's decision. The question for me is whether or not there was any sub rosa agreement between the prosecutor and Pacheco's defense counsel to reward Pacheco for his testimony against the defendant by concocting a strategy to somehow convince a judge to dismiss the murder charges against Pacheco? There is no credible evidence that Attorney Stephenson and Assistant District Attorney Safford did anything other than that to which they testified.

I firmly reject Mr. Pacheco's testimony offered during the evidentiary hearing that he had no involvement in the murders nor did the defendant. Pacheco says his trial testimony was based on his expectation that the Commonwealth would arrange for his freedom if his testimony was in accord with the prosecution's theory of the case. The trial evidence established beyond question that Pacheco drove Santiago and Carcano to the execution site knowing full well that his other two passengers, Rivera and Diaz, intended to murder Santiago and Carcano. Indeed his description of how the wounds were inflicted on the victims was entirely consistent with the medical examiner's objective findings.

Mr. Pacheco walked away from these murders as a free man. Now he is in prison serving substantial sentences for armed robbery, assault and battery by means of a dangerous weapon and assault and battery, all arising from an unrelated incident. See the unpublished decision in *Commonwealth v. Pacheco*, 62 Mass.App.Ct.1114 (2004). There is little question that Pacheco's recantation is an effort to improve his lot among some of his fellow inmates, rather than a genuine desire to tell the truth.

14

exercised authority within it as contrasted with the *Rivera* defendant who was not a member of the

Ramos organization. Also note should be made that the jury was instructed on the proper use of

the challenged evidence.

## ORDER

The defendant's Substitute Motion for a New Trial is **DENIED**. The Hampden County

Clerk of Courts will transmit a copy of this decision to the Clerk of the Supreme Judicial Court

for filing in SJC No. 09174.

Constance M. Sweeney
Justice of the Superior Court

Dated: November 18, 2005

16

FILED
IN CLERKS OFFICE

2007 NOV 30  A 10: 03

U.S. DISTRICT COURT
DISTRICT OF MASS.

EXHIBIT# 7
20 Pages

DeFeNDANt's First VERIFIED
Motion For NEW TriAL

June 14, 2004

Maura Doyle, Clerk
Supreme Judicial Court
Single Justice Session
One Beacon Street
Boston, Ma 02108

Re: Commonwealth v. Rivera, SJC #04- **0338**_____ Chapter 278,
    §33E Application For Leave To Appeal.

Dear Clerk Doyle:

Please find inclosed for filing in the above-entitled
matter, an exact **TYPED** copy of the "Defendant's First Verified
Mass. Crim. P. Rule 30(b) Motion For A New Trial With Evident-
iary Hearing And Assignement Of Counsel Requests."

For the Court's convenience, would you please **SUBSTITUTE**
this enclosed **TYPED** copy of the Defendant's Motion with the
hand-written copy originally filed.

Moreover, the defedant filed his Chapter 278, §33E Appli-
cation For Leave To Appeal on March 29, 2004, and he has yet
to receive a docket number and or response to his accompanying
motion (ASSIGNMENT OF COUNSEL)' The Defendant would greatly
appreciate it if the Clerk would inform him regarding these
matters.

Thank you very much for your time and attention to these
very important matters.

Very truly yours,

Luis Rivera, w-52832
POst Office Box 100
South Walpole, Ma 02071


Cc: William M. Bennett, Hampden County District Attorney

COMMONWEALTH OF MASSACHUSETTS
HAMPDEN, SS.
SUPERIOR COURT DEPT.

COMMONWEALTH

V.

No. 91 - 2249 THRU
91 - 2251

HAMPDEN COUNTY
SUPERIOR COURT
FILED

NOV 10 2003

Marie T. Mazza
CLERK-MAGISTRATE

LUIS RIVERA

DEFENDANT'S FIRST VERIFIED
MASS. CRIM. P. RULE 30 (b) MOTION
FOR A NEW TRIAL WITH EVIDENTIARY
HEARING AND ASSIGNMENT OF COUNSEL REQUESTS

Now comes the defendant, in the above-entitled matter, and moves this court FOR A NEW TRIAL pursuant to MASS. CRIM. P. Rule 30 (b), while requesting an evidentiary hearing and also requesting assignment of counsel for such hearing pursuant to S.J.C. Rule 3:10 and MASS. G.L. c. 211D §14 presenting the following meritorious grounds. One issue of ineffective appellate counsel, Ground Two issue of both the Prosecutor and trial Judge misstating the meaning of reasonable doubt, Ground three issue of ineffective trial counsel who failed to

— 1 of 10 —

*(Left margin, vertical text):* I have a fairly clean memory of the witness Jose Pacheco's testimony having known it twice — both at this trial and at the trial of a co-defendant, Ivan Diaz. I simply do not believe his alleged recantation. The other allegations are not worth having given the white serious consideration. Therefore, the motion is Denied without a hearing. an evidentiary hearing without a substantial issue requiring. See Commonwealth v. Raymond, 424 Mass. 382, 397 (1997).

*(Bottom):* All statements made herein are made under pain and penalty of perjury and all trial transcript citations are true and accurate. Also affidavits from Jose Pacheco and Francis Babon.

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, SS.                                SUPERIOR COURT DEPT.
                                            NO. 91-2247 THRU 91-2251

|                  |   |
| ---------------- | - |
| COMMONWEALTH     | ) |
|                  | ) |
| V.               | ) |
|                  | ) |
| LUIS RIVERA      | ) |
|                  | ) |

DEFENDANT'S FIRST VERIFIED [1]
MASS. CRIM. P. RULE 30(B)
MOTION FOR A NEW TRIAL WITH
EVIDENTIARY HEARING AND ASSIGN-
MENT OF COUNSEL REQUESTS

Now comes the defendant, in the above-entitled matter,
and moves this court for a new trial pursuant to Mass. Crim.
P. Rule 30(b), while requesting an evidentiary hearing and also
requesting assignement of counsel for such hearing, pursuant
to S.J.C. Rule 3:10 and Masss. G.L.c. 211D, §14, presenting
the following meritorious ground one issue of ineffective appel-
late counsel, ground two issue of both the prosecutor and trial
judge misstating the meaning of reasonable doubt, ground three
issue of ineffective trial counsel who failed to prepare the
defendant to testify and failed to object to obvious closing
argument and instructional error, and ground four issue of the
main state witness revealing previously undisclosed and concealed
deals while recanting his perjured trial testimony.

[1] All statements made herein are made under pain and penalty
of perjury and all transcript citations are true and accurate.
Also affidavit from Jose Pacheco and Francis Pabon.

-2-

## STANDARDS GOVERNING RULE 30 PROCEEDINGS

In deciding whether to grant a Mass. Crim. P. Rule 30(b) motion, the primary question for the motion judge is whether "justice may not have been done," Commonwealth v. Gagliardi, 21 Mass. App. Ct. 439 (1986); Commonwealth v. Harrington, 379 Mass. 444, 449 (1980); Commonwealth v. Repoza, 400 Mass. 516, 518, 523 (1987); Commonwealth v. Tucerri, 412 Mass. 401 (1992).

Our Supreme Judicial Court has repeatedly stated that "if the original trial was infected with prejudicial error, the judge has no discretion to deny a new trial," Earle v. Commonwealth, 358 Mass. 181, 184 (1969); Commonwealth v. Penrose, 363 Mass. 677, 681 (1973); Lannon v. Commonwealth, 379 Mass. 786, 788 (1980); Commonwealth v. Cook, 380 Mass. 314, 320-321 (1980).

When deciding this motion, this court must "make such findings of fact as are necessary to resolve the defendant's allegations of error of law," Commonwealth .v Sullivan, 385 Mass. 497, 502 (1982); Commonwealth v. Grace, 397 Mass. 303, 305 (1986) as the plain language of Rule 30(b) requires, Id.

The judge has broad discretion as to the manner in which a new trial motion is heard by affidavit or by receiving oral testimony, Mass. Crim. P. Rul3 30 (c)(3)(4), and an evidentiary hearing on non-disclosed rewards provided a main witness in Hampden County presents a serious evidentiary hearing question, Commonwealth v. Hill, 432 Mass. 704, 710 n. 15 (2000). However, "where a substaintial issue is supported by a substantial evi-

-3-

dentiary showing the judge should hold an evidentiary hearing," Commonwealth v. Stewart, 383 Mass. 254, 260-266 (1980); Commonwealth v. Licata, 412 Mass. 654, 661-662 (1992); Commonwealth v. Meggs, 30 Mass. App. Ct. 111 (1991); Commonwealth v. Companonino, 420 Mass. 1003 (1995); Commonwealth v. Conley, 43 Mass. App. Ct. 385, 386-387 (1997); Commonwealth v. Hill, supra.

In decideing a Rule 30 (b) motion a judge should use a "cumulative error" analysis, Commonwealth v. Gagliardi, 21 Mass. App. Ct. 39 (1986); Commonwealth v. Cancel, 394 Mass. 5676 (1985); Commonwealth v. Bassette, 21 Mass. App. Ct. 906 (1989); Commonwealth v. Skinner, 408 Mass. 88 (1990) on the question of whether cumulative errors denied the defendant a fundamentally fair trial United States v. Dwyer, 843 F. 2d 60, 65 (1st Cir. 1988); Floyd v. Meachum, 907 F. 2d 347, 355 (2nd Cir. 1990);Berryman v. Morton, 100 F. 3d 1089, 1095, 1102 (3rd Cir. 1996); Cole v. Peyton, 389 F. 2d 224, 226-227 (4th Cir. 1968); Moore v. Johnson, 194 F. 3d 586, 622 (5th Cir. 1999); Cooper v. Sowders, 837 F. 2d 284, 286-287 (6th Cir. 1988); Williams v. Washington, 59 F. 3d 673, 682 (7th Cir. 1995); Freeman v. Class, 95 F. 3d 639, 644 (8th Cir. 1996); Conde v. Henry, 198 F. 3d 734, 741 (9th Cir. 1999); Fisher v. Gibson, 282 F. 3d 1283, 1307-1311 (10th Cir. 2000); Walker v. Davis, 840 F. 2d 834, 838 (11th Cir. 1988); Chambers v. Mississippi, 410 U.S. 284, 302-303 (1973).

## STATEMENT OF MATERIAL FACTS

The absence of overwhelming evidence and weak, conflicting testimony by cooperating witnesses with motives to lie is set

out in the defendant's decision, Commonwealth v. Rivera, 424
Mass. 266 (1997) incorporated herein, with incompetent atty
James Couture's appeal briefs to be filed as an exhibit.

The June 29, 1992 transcript pages 55 and 97 (attached
hereto) show prejudicial misstatements of reasonable doubt by
both the prosecutor and the trial judge.

The affidavit of Luis Rivera shows trial attorney Alan
Black's failure to prepare the defendant to testify and failure
to present a full defense.

The affidavit of Jose Pacheco truthfully states he was
at his mother's house and not at the crime scene; that he did
not witness the defendant commit any crime and reveals an undis-
closed deal, as corroborated by the affidavit of Francis Pabon.

## SUPPORTING LEGAL GROUNDS

> **GROUND ONE:** THE DEFENDANT'S CONVICTION WAS UNLAWFULLY
> AFFIRMED THROUGH THE NON-STRATEGIC OMISSION OF MERITOR-
> IOUS GROUND TWO AND GROUND THREE FROM THE DIRECT APPEAL
> BY INCOMPETENT AND INEFFECTIVE ASSIGNED C.P.C.S. ATTOR-
> NEY JAMES COUTURE, IN VIOLATION OF THE SIXTH AND FOUR-
> TEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
> AND MASS. DECLARATION OF RIGHTS ARTICLE 12

### FACTS SUPPORTING GROUND ONE:

The defendant having no prior opportunity to prersent ineffec-
tive assistance of direct appeal counsel now supports a Mass.
Crim. P. Rule 30(b) finding that this gound has not been waived[2]
and attorney James Couture's failure to explain his non-strategic

---

[2] Such a finding of no waiver was made in Commonwealth v. Perrot,
Hampden No. 85-5415-18, 542-25 (09/11/01) Wernick, J., granting
new trial, opinion pages 13-14 citing Comonwealth v. Cormier,
41 Mass. App. Ct. 76, 77 (1996).

-5-

omissions supports this court holding a full evidentiary hearing at which Couture is requested to explain such omissions.

Attorney Coutures's brief omitted ground two, infra, closing misstatement of law by the prosecutor and related erroneous burden of proof instructional error, while also omitting ground three infra, ineffective assistance of trial counsel related to such constitutional errors not being objected to. [3]

Seven years prior to the defendant's 1992 trial these constitutional errors were held to be obvious in Commonwealth-v. A Juvenile, 396 Mass 215, 217-220 (1995) and Commonwealth v. Quirk, 27 Mass. App. Ct. 258, 264 (1989).

The cumulative errors in grounds two and three were obviously stronger and more likely to win reversal of the defendant's conviction than the weak issues attorney Couture briefed and failed to federalize properly; thereby causing prejudice from loss of 28 USC §2254 Federal Habeas Corpus review rights.

## APPLICATION OF THE LAW TO THE FACTS:

When reviewing this ground one claim a proper analysis involves the question of "whether the issues which (the defendant) claims appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial, and were obvious from the trial record that failure to present such issues amounted to ineffective assistance of

---

[3] After being fired for covering up and gross incompetence in pro se new trial win in Commonwealth v. Dellelo, Suffolk nos. 88-3-8809 (06/09/03 Ball, J.) so-called attorney Jeffrey Baler tried to cover-up by refusing to screen and report ground one claims.

-6-

appellate counsel," Gaines v. Matesanz, 272 F. Supp. 2d 121,
143 (D.C. Mass. 2003) quoting Commonwealth v. Sowell, 34 Mass.
App. Ct. 229, 232 (1993) quoting Gray v. Greer, 800 F. 2d 644,
646-647 (7th Cir. 1985) cited with approval in Smith v. Robins,
528 U.S. 259, 288 (2001).

This court must have attorney Couture testify at an evi-
dentiary hearing providing his explaination, of, or admission
to non-strategic omissions or a federal evidentiary hearing
must be held, Mapes v. Coyle, 171 F. 3d 408, 427-429 (6th Cir.
1999); Williams v. Taylor, 120 S. Ct. 1479, 1490 (2000).

After such an evidentiary hearing, attorney Couture's non-
strategic omission of grounds two and three support this court
granting a new trial, Roe v. Delo, 160 F. 3d 416, 418-420 (8th
Cir. 1999); Commonwealth v. Perrot, supra; Commonwealth v. Skinner,
Plymouth nos 90030, 90031 (08/21/01 Tierney, J.), or vacating
the conviction and reinstaing it to restart the one year time
limit 28 USC §2244 federal habeas corpus review clock, Commonwealth
v. Stubbs, 15 Mass. App. Ct. 955 (1983) because a sixth amendment
"deprivation (is) subject to the general rule that remedies
should be tailored to the injury suffered from the constitutional
violation," United States v. Morrison, 449 U.S. 361, 364 (1981)
and "the only appropriate remedy for a violation of the sixth
amendment is to restore the defendant as much as possible ...
to the circumstances that would have existed had there been
no constitiutional error," United States v. Duran-Benitez, 110
F. Supp. 2d 135, 155 (E.D. N.Y. 2000).

GROUND TWO: THE DEFENDANT'S CONVICTION WAS UNLAWFULLY
OBTAINED BY TWO RELATED MISSTATEMENTS OF PROOF BEYOND A

-7-

REASONABLE DOUBT IN THE PROSECTOR'S CLOSING ARGUMENT
AND IN THE JURY INSTRUCTIONS, WHICH PREJUDICIALLY IN-
FECTED THE ENTIRE TRIAL, IN VIOLATION OF THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
AND MASS. DECLARATION OF RIGHTS ARTICLE 12.

## FACTS SUPPORTING GROUND TWO:

In conjunction with ground three, infra, incorporated herein
by reference, the defendant sets forth the following prejudicial
cumulative errors.

During closing argument the prosecutor misstated the legal
burden of proof by telling the jury:

" **It's not beyond every reasonable doubt** ... I mean
it's possible, ladies and gentlemen, that a horde
irate individuals rode by and shot those two individ-
uals. That's possible, but **it's not probable.**"
(June 29, 1992 transcript page 55).

After the prosecutor told the jury that the defendant had
to show someone else committing the crime was "probable" and
that proof beyond a reasonable doubt did **"not"** mean proof "beyond
**every** reasonable doubt," trial judge Ford approved such misstate-
ments of law by erroneously instructing the jury that:

" **Proof beyond reasonable doubt does not mean** ...
proof **beyond all reasonable doubt,** the mere possibility
of innocence"
(June 29 1992 transcript page 97)

## APPLICATION OF THE LAW TO THE FACTS:

The combined misstatements of law created confusion as
to what degree of reasonable doubt was sufficient for acquital,
or skewed the meaning of "reasonable doube' to a degree that
it became incomprehensible, as decisional law, infra, supports
such findings.

This is not a case whewre a prosecutor made a single isolated

-8-

misstatement of law, United States v. Grassrope, 342 F. 3d 866 870-871 (8th Cir. 2003)(collecting cases), although even a single misstatement of law by a state prosecutor supports 28 USC §2254 Federal Habeas Corpus relief when trial evidence may be fairly characterized as weak, Pagano v. Allard, 218 F. Supp. 2d 26, 32-38 (D.C. Mass. 2002)[4]

This is also not a case where jury instructions merely "contain(ed) one slip" on reasonable doubt, Gaines v. Matesanz, 272 F. Supp. 2d 121, 133-134 (D.C. Mass. 2003), although a single isolated misstatement of reasonable doubt does support granting a new trial, Commonwealth v. Pickles, 393 Mass. 775, 776-780 (1984); Commonwealth v. Wood, 380 Mass 545, 547-551 (1980) and Justice Abrams did forewarn judges to avoid the mistake made in the case at bar four years before the defendant's 1992 trial, Commonwealth v. Santos 402 Mass. 775, 788 (1988).

The misconduct here was **not** "slight or confined to a single instance, but ... was pronounced and presistant, with a probable **cumulative effect** upon the jury which cannot be disregarded as inconsequential," Berger v. United States, 295 U.S. 78, 89 (1935).

In the case at bar the prosecutor deliberately and forcefully argued that proof beyond a reasonable doubt paralogically means the state's burden is **"not** beyond **every reasonable doubt"**

---

[4] At page 90 of the June 29, 1992 transcript Judge Ford complements the experienced state prosecutor for how he conducted the trial while no curative instructions were given for the obviously improper closing argument misstatements of law (06/29/92 Trans. page 55).

-9-

clearly approved by judge Ford instructing "proof beyond a reasonable doubt does **not** mean ... **proof beyond all reasonable doubt**," which "essentially told the jurors that they needed some undefined amount" of reasonable doubt, which "defied comprehension," Lanigan v. Maloney, 853 F. 2d 40, 46-47 (1st Cir. 1988)("a degree of moral certainty" ... "not beyond an absolute doubt"). The "cumulative effect" of two paralogical misstatements of reasonable doubt "was to obfuscate one of the essentials of due process and fair treatment," Dunn v. Perrin, 570 F. 2d 21, 25 (1st Cir. 1978) and falls into the catagory of "structural error," Sullivan v. Louisiana, 508 U.S. 275, 280-282 (1993).

With respect to the improper closing argument in the case at bar, this case falls under a cumulative prejudice analysis similar to "the comments in Caldwell (which) were approved by the trial judge, "Darden v. Wainwright, 477 U.S. 168, 183 n. 15 (1985)(distinguishing argument which did not implicate a specific constitutional right) citing Caldwell v. Mississippi, 472 U.S. 320, 339-340 (1985)(improper argument was "focused, unambiguous and strong").

The trial judge's repeating the obviously confusing misstatement of law by the prosecutor "placed a stamp of imprimature on the prosecutor's statement, ensuring the denial of the (defendant's) constitutional right," Pagano v. Allard, 218 F. Supp. 2d 26, 35 (D.C. Mass. 2002) to be proven guilty beyond a reasonable doubt, by creating the "appearance of judicial approval," Mahorney v. Wallman, 912 F2d 469, 473 n. 4 (10th Cir. 1990)(writ granted when prosecutor's misstatement of law

specifically allowed by state trial judge).

No physical evidence linked defendant Luis Rivers to the
crime scene and only cooperating witnesses with deals and motive
to lie testified directly against him at trial, Commonwealth
v. Rivera, 424 Mass. 266 (1997). Such errors are not harmless
where a case turns on witness credibility, Mahorney v. Wallman,
supra, 917 F. 2d at 474; Pagano v. Allard, supra, 218 F. Supp.
2d at 36-37, or where a main government witness has questionable
credibility, United States v. Beale, 921 F. 2d 1412, 1425 (11th
Cir. 1991); United States v. Beckman, 222 F. 3d 512, 524-527
(8th Cir. 2000) or where there is a question of credibility
of several witnesses, United States v. Crutchfield, 26 F. 3d
1098, 1103 (11th Cir. 1994) and is not harmless error where
three cooperating witnesses with deals had a motive to lie,
United States v. Blakey, 14 F. 3d 1557, 1561 (11th Cir. 1994)
even when other evidence tends to circumstantially corroborate
cooperating witnesses, Coppola v. POwell, 878 F. 2d 1562, 1569-
1571 (1st Cir. 1989) and still does not become harmless error
when eight(8) cooperating witnesses with deals implicate a
defendant, United States v. Hands, 184 F. 3d 1322, 1326-1334
(11th Cir. 1999). Without a confession, an incorrect explaina-
tion of reasonable doubt cannot be harmless error, Lanigan v.
Maloney, 853 F. 2d 40, 50 (1st Cir. 1988) even when other evidence
"was substantial," Dunn v. Perrin, 570 F. 2d 21, 25 (1st Cir.
1978); Commonwealth v. Wood, supra; Commonwealth v. Pickles,
supra; Commonwealth v. Sullivan, 20 Mass. App. Ct. 802, 803-
807 (1983).

-11-

Where, as here, the trial depended on witnesses question-
able credibility, the two erroneous explainations of reason-
able doubt cannot be deemed to be harmless error, Commonwealth
v. Kelleher, 395 Mass 821, 8220828 (1985); Commonwealth v. Rem-
biszbuski, 391 Mass 123 (1984).

> **GROUND THREE:** THE DEFENDANT'S CONVICTION WAS UNLAW-
> FULLY OBTAINED THROUGH MULTIPLE NON-STRATEGIC OMISSIONS
> BY INCOMPETENT AND INEFFECTIVE ASSIGNED C.P.C.S.
> ATTORNEY ALAN BLACK, IN VIOLATION OF THE SIXTH AND
> FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
> AND MASS. DECLARATION OF RIGHTS ARTICLE 12

### FACTS SUPPORTING GROUND THREE:

As attorney Black is expected to admit in his evidentiary

hearing testimony that he had no strategic reason for failing
to object to ground two, supra, misstatements of the law on
reasonable doubt, that he totally failed to prepare the defen-
dant to testify, failed to interview witnesses and failed to
call the main state witnesses (Jose Pacheco's) mother to testify
he was with her at the time of the offenses.

The defendant's affidavit verfies he was not prepared to
testify by attorney Black and after he is prepared by new counsel
he shall testify truthfully to his actual innocence at the eviden-
tiary hearing in this case.

### APPLICATION OF THE LAW TO THE FACTS:

Following the 1985 decision in A Juvenile, supra, the 1986
decision in Quirk, supra, and the 1988 decision in Santos, supra,
any minimally competent lawyer would have made a strong contem-
poraneous objection to ground two supra, obviously prejudicial
misstatements of law on reasonable doubt by both the trial prose-

cutor and trial judge, Mello v. DiPaulo, 295 F. 3d 137, 148
(1st Cir. 2002)("the Commonwealth's contention that the prose-
cutor's closing argument must not have been so prejudicial if
Mello's counsel failed to object plainly misses the point").
After attorney Alan Black testifies, this court should make
a Mass. Crim. P. Rule 30(b) finding that **defendnant Rivera "has
shown that the failure(s) to object (were) based on simple
incompetence and not on trial strategy,"** Washington v. Hofbauer,
228 F. 3d 689, 707 (6th Cir. 2000); Cargle v. Miller, 317 F.
3d 1196, 1217 (10th Cir. 2003); Cox v. Donnelly, 267 F. Supp.
2d 418 (E.D. N. Y. 2003); Corsa v. Anderson, 443 F. Supp. 176,
178 (E.D. Mich. 1977); Oyola v. Boles, 947 F. 2d 928, 930-935
(11th Cir. 1991); Gray Lynn, 6 F. 3d 263, 269-270 (5th Cir.
1993); Commonwealth v. Kane, 19 Mass. App. Ct. 129, 142 (1984).

Similarly, attorney Black being too lazy to obtain Jose
Pacheco's bail hearing transcript of the undisclosed deal falls
under ground four, infra, cumulative error analysis "in connec-
tion with a claim that petitioner's trial attorney was ineffective
for failing to investigate adequately whether a witness had
a deal with prescutor's," Cargle v. Mullin, 317 F. 3d 1196,
1216 (10th Cir. 2003) and "the prejudice flowing from such
counsel error is magnified here by crucial nature of (Pacheco's)
testimony to the state's case," Id. The related failure to
interview and call Jose Pacheco's mother to testify that Pacheco
was home with her at the time of the murders, thereby exposing
the deliberately false testimony presented by prosecutors,
clearly amounted to ineffective assistance of trial counsel,

Commonwealth v. Farley, 432 Mass. 153, 156 (2002); Pavel v. Hollins, 261 F. 3d 210, 219-229 (2nd Cir. 2001); Berryman v. Morton, 100 F. 3d 1089, 1096-1102 (3rd Cir. 1996); Griffin v. Warden, 970 F. 2d 1355, 1358 (4th Cir. 1992); Harris v. Reed, 894 F. 2d 871, 878-879 (7th Cir. 1990); Chambers v. Armontrout, 885 F. 2d 1318, 1320-1224 (8th Cir. 1989); Lord v. Wood, 184 F. 3d 1083, 1093-1095 (9th Cir. 1999); Fisher v. Gibson, 282 F. 3d 1283, 1289-1311 (10th Cir. 2002); Scott v. Wainwright, 698 F. 2d 427, 429-430 (11th Cir. 1983) because "an attorney who fails to interview a readily available witness whose non-cumulative testimony may potentially aid the defense should not be allowed automatically to defend his omissions simply by raising the shield of trial strategy and tactics," Crisp v. Duckworth, 743 F. 2d 580, 584 (7th Cir. 1994); United states Ex Rel Cosey v. Wolff, 562 F. Supp. 871, 878-879 (N.D. Ill. 1983), grant of writ affirmed 727 F. 2d 656 (7th Cir. 1984); Sullivan v. Fairman, 819 F. 2d 1382, 1389 (7th Cir. 1987). This is true because "counsel's anticipation of what a potential witness would say does not excuse the failure to find out," United States v. Moore, 554 F. 2d 1086, 1093 (D.C. Cir. 1976); United States v. Gray, 878 F. 2d 702, 711-712 (3rd Cir. 1989) and "an attorney's performance is deficient when he or she fails to conduct any investigation into exculpatory evidence and has not provided any explaination for not doinf so, Stevens v. Deleware Correctional Center, 152 F. Supp. 2d 561, 576 (D. Del. 2001). Attorney Black's testimony must be taken at an evidentiary hearing on his failure to obtain a bail hearing

-14-

transcript to verify Pacheco's deal, and failure to interview and call Pacheco's mother to testify, Commonwealth v. Aviles, 40 Mass. App. Ct. 440, 443-447 (1996) as well as both Black's and defendant's testimony taken at an evidentiary hearing on lazy attorney Black's complete failure to prepare the defendant to testify, Commonwealth v. Licata, 421 Mass. 654, 661-662 (1992).

The defendant's right to testiy is one of the most basic and fundamental components of the right to present a defense, Rock v. Arkansas, 483 U.S. 44 (1987) and a failure to prepare or a lack of knowing, intelligent and voluntary wavier claim cannot properly be resolved without an evidentiary hearing, Gallego v. United States, 174 F. 3d 1196, 1198-1199 (11th Cir. 1999) where, as here, attorney Black never advised the defendant that it was solely the defndant's decision, as required by C.P.C.S. Rules, and completely failed to prepare him to testify. After a full evidentiary hearing this sub-claim is sufficient standing alone to support an order for a new trial, Commonwealth v. Freeman, 29 Mass. App. Ct. 635, 639-641 (1990); United States v. Butts, 630 F. Supp. 1145, 1146-1148 (D. Me. 1986); Deluca v. Lord, 858 F. Supp. 1330, 1350-1360 (S.D. N.Y. 1994).

New assigned counsel is required to obtain evidence cor-robarating the defendant's new trial motion testimony.

> GROUND FOUR: THE DEFENDANT'S CONVICTION WAS UNLAW FULLY OBTAINED BY THE PROSECUTOR'S KNOWING AND DEL-IBERATE PRESENTATION OF FALSE TESTIMONY AND CONCEAL-MENT OF A BAIL RELEASE DEAL WITH CO-DEFENDANT JOSE PACHECO WHOSE CHARGES WERE DISMISSED AS A REWARD FOR HIS PERJURED TESTIMONY, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

AND ARTICLE 12 OF THE MASSACHUSETTS DECLARATION
OF RIGHTS

## FACTS SUPPORTING GROUND FOUR:

Prior to and during trial the prosecutor falsely
claimed there were no deals with the main state witness Jose
Pacheco, that he did not get out on bail as part of any deal,
and ground three, supra, ineffective attorney Alan Blck failed
to obtain Pacheco's bail release hearing transcript, which must
now be ordered with the prosecutor's file and notes also ordered
produced at the ground four evidentiary hearing. The affidavit
of Jose Pacheco avers he was released on bail as part of a
deal.

Jose Pacheco did not witness the defendant commit any crime
and did not witness the murders [as corroborated by Pacheco's
testimony conflicting with crime scene evidence and other wit-
nesses]. Pacheco was at his mother's house in Holyoke at the
time of the murders and was not at the crime scene. Although
not admissible into evidence without stipulation of agreement
from the prosecutor, Pacheco is willing to take a polygraph
to verify he did not witness the murders, as is standard prac-
tice for federal prosecutors and other state's prosecutors to
verify or refute a cooperating witnesses story.

Hampden County prosecutor Howard Safford verbally told
Jose Pacheco that in return for his testimony he would be re-
leased on low bail and not prosecuted for joint-venture par-
ticipation in the offenses.

Jose Pacheco's murder related charges were dismissed and

-16-

he was released on bail, as records newly assigned counsel is obtaining shall verify.

## APPLICATION OF THE LAW TO THE FACTS:

As an initial matter the prosecutor's files and notes must be ordered produced and, after In Camera Judicial inspection, disclosed, while Pacheco's bail release hearing transcript ordered and evidentiary hearing testimony heard from attorney Charles Stephenson, prosecutor Howard Safford, witness Jose Pacheco, and corroborating witness Francis Pabon; Commonwealth v. Hill, 432 Mass. 704, 710 n. 15 (2000); Blackmon v. Scott, 22 F. 3d 560, 564-567 (5th Cir. 1994)[5].

The truthful affidavit of Pacheco with his polygraph verfied evidentiary hearing truthful testimony of not being present at the scene of the murders, presents an actual innocence based independant due process violation or right to fundamentally fair trial because a state cannot leave a conviction in place after a credible recantation by a main witness most likely would have changed the outcome of the trial, Sanders v. Sull-ivan, 900 F. 2d 601, 602-608 (2nd Cir. 1990)(release ordered by writ of habeas corpus when main witnesses' post-conviction affidavit filed admitting the witness committed perjury by falsely testifying at trial he saw a defendant shoot and kill someone).

---

[5] The dismissal of Pacheco's charges and bail release presents a more compelling foundation for a hearing than Commonwealth v. Holmes, 46 Mass. App. Ct. 550, 560-561 (1999) Habeas Corpus pending Holmes v. Pepe 06-10995-RCL (2002 briefing for 2004 decision).

-17-

Because "little direct or circumstatial evidence supported either side's version of events," Ellsworth v. Warden, 333 F. 3d 1, 9 (1st Cir. en banc 2003)(Torrudla, J., concurring) and "the materiality inquiry is a context specfic determination," Spicer v. Roxbury Correctional Institution, 194 F. 3d 547, 560 (4th Cir. 1999) the bail hearing transcript verification of a deal can support an order for a new trial based on the weak uncorroborated evidence in this case, even if the later dismissal of charges claim is not verified.

However, if dismissal of charges is found to be be part of the undisclosed deal, then a new trial must be granted, Commonwealth v. Collins, 386 Mass. 1, 8-12 (1982); Commonwealth v. Hill, supra, 431 Mass. at 711-720; Ely v. Matesanz, 983 F. Supp. 2d 21, 35-45 (D.C. Mass. 1997); Jenkins v. Artuz, 294 F. 3d 284, 292-297 (2nd Cir. 2002).

## CONCLUSION

Counsel must be assigned and after a full evidentiary hearing a new trial must be granted[6].

Most Respectfully Submitted,

November 6, 2003
given to prison staff to
mail November 5, 2003

*Luis F. Rivera Lz*

Luis Rivera Pro Se
P.O. Box 100
South Walpole, Ma 02071

Copy served on:
District Attorney William Bennett
50 State Street Street
Springfield, Ma

---

[6] Or if either the Superior Court erroneously denies ground two
(continued next page)

-18-

---

[6](continued from previous page)
and three on the merits ground one relief of vacating and re-
imposing the condition to restart 28 USC §2244 one year clock
for 28 USC §2254 Federal Habeas Corpus review, must be allowed
as the appropriate remedy for ineffective assistance of direct
appeal counsel.



## EXHIBIT #8

December 28,2004 Petition for Writ of Habeas Corpus w-attachments
(10 pages)

241 (Rev. 5/85)

**PETITION UNDER 28 USC § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District OF MASSACHUSETTS | |
|---|---|---|
| Name LUIS RIVERA | Prisoner No. W-52832 | Case No. 04-12717-RCL |

| Place of Confinement | MCI-CEDAR JUNCTION<br>POST OFFICE BOX 100<br>SOUTH WALPOLE, MA 02071 |
|---|---|

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| LUIS RIVERA | V. DAVID NOLAN, SUPERINTENDENT |

| The Attorney General of the State of: MASSACHUSETTS (THOMAS REILLY) | | |
|---|---|---|

## PETITION

1. Name and location of court which entered the judgment of conviction under attack __HAMPDEN COUNTY__ SUPERIOR COURT, HALL OF JUSTICE, 50 STATE STREET, SPRINGFIELD, MA 01102

2. Date of judgment of conviction JUNE 29, 1992

3. Length of sentence __2 NATURAL LIFE SENTENCES (NO PAROLE), 4-5 ON AND AFTER__

4. Nature of offense involved (all counts) __2 COUNTS FIRST DEGREE MURDER, UNLAWFUL__ CARRYING OF A FIREARM.

5. What was your plea? (Check one)
   (a) Not guilty        ☒
   (b) Guilty            ☐
   (c) Nolo contendere   ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury          ☒
   (b) Judge only    ☐

7. Did you testify at the trial?
   Yes ☐      No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒      No ☐

⑰ 242 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court _____ SUPREME JUDICIAL COURT _____

(b) Result _____ JUDGMENT AFFIRMED _____

(c) Date of result and citation, if known _____ FEBRUARY 13, 1997 (424 MASS. 266) _____

(d) Grounds raised _____ SEE SJC'S DECISION (ATTACHED HERETO) _____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court _____ N/A _____

(2) Result _____ N/A _____

(3) Date of result and citation, if known _____ N/A _____

(4) Grounds raised _____ N/A _____

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____ SUPREME JUDICIAL COURT _____

(2) Result _____ CERTIORARI WAS DENIED ON 10/13/1998 _____

(3) Date of result and citation, if known _____ RIVERA V. MASSACHUSETTS, _____ U.S. _____ (19 )

(4) Grounds raised 1. WHETHER DEFENDANT WAS DENIED A FAIR TRIAL BY THE COMMONWEALTH'S INTERFERING WITH INTERVIEWING OF COMMONWEALTH'S WITNESS AND DEFENSE ATTORNEY; 2, WHETHER DEFENDANT WAS DENIED HIS RIGHT TO COUNSEL AND TO REMAIN SILENT.

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

    Yes ☒      No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _____ UNITED STATES DISTRICT COURT _____

(2) Nature of proceeding _____ HABEAS CORPUS PETITION _____
1 ERRONEOUS DENIAL OF MOTION TO SUPPRESS PETITIONER'S STATEMENTS; 2, ERRONEOUS DENIAL OF WITNESSES; 3, ERRONEOUS ADMISSION OF PREJUDICIAL EVIDENCE; 4, IMPROPER CLOSING STATEMENTS BY PROSECUTOR.

(3) Grounds raised _____ SUPRA _____

AO 241 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☒

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____ HAMPDEN SUPERIOR COURT _____

(2) Nature of proceeding _____ NEW TRIAL MOTION _____

(3) Grounds raised <u>MERITORIOUS APPELLATE GROUNDS ON DIRECT APPEAL; 2. CONVICTION</u> 1. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY OMISSION OF <u>UNLAWFULLY OBTAINED DUE TO TWO RELATED MISTATEMENTS OF PROOF BEYOND A</u> <u>REASONABLE DOUBT IN PROSECUTOR'S CLOSING ARGUMENT AND JURY INSTRUCTIONS;</u> <u>3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO OBJECT AND</u> <u>FAILURE TO CALL NECESSARY WITNESS FOR DEFENSE; AND 4. THE CONVICTION</u> <u>WAS UNLAWFULLY OBTAINED BY PROSECUTOR'S KNOWING AND DELIBERATE PRESEN-</u> <u>TATION OF FALSE TESTIMONY AND CONCEALMENT OF EXCULPATORY EVIDENCE,</u> WHICH VIOLATED PETITIONER'S SIX AND FOURTEENTH AMENDMENT RIGHTS.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☒

(5) Result _____ NEW TRIAL MOTION DENIED _____

(6) Date of result _____ NOVEMBER 20, 2003 (SEE SJ-2004-0338, denied 12/14/04)

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.                Yes ☒    No ☐
(2) Second petition, etc.               Yes ☒    No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.
Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

(4)

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self–incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.   Ground one: _____

**SEE ATTACHMENT**

Supporting FACTS (state *briefly* without citing cases or law) _____

**SEE ATTACHMENT**

B.   Ground two: _____

**SEE ATTACHMENT**

Supporting FACTS (state *briefly* without citing cases or law) _____

**SEE ATTACHMENT**

C.    Ground three: _____

SEE ATTACHMENT

Supporting FACTS (state *briefly* without citing cases or law) _____

SEE ATTACHMENT

D.    Ground four: _____

SEE ATTACHMENT

Supporting FACTS (state *briefly* without citing cases or law) _____

SEE ATTACHMENT

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

N/A

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes ☐    No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a)   At preliminary hearing    ALAN J. BLACK, 1383 MAIN STREET, SPRINGFIELD
                                MA. 01103

(b)   At arraignment and plea    (SAME AS ABOVE)

AO 241 (Rev. 5/85)

(c) At trial _____ (SAME AS ABOVE)

(d) At sentencing _____ (SAME AS ABOVE)

(e) On appeal _____ JAMES A COUTURE, 10 SOUTH MAIN STREET, P.O. BOX 63, BELCHERTOWN, MA 01007

(f) In any post—conviction proceeding ____ PRO SE

(g) On appeal from any adverse ruling in a post—conviction proceeding _____ PRO SE

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?

Yes ☒    No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐    No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐    No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____ PRO SE _____

Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

DECEMBER 20, 2004
(date)

_Luis F. Ruerin 2_

Signature of Petitioner

(7)

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

LUIS RIVERA,          )
                      )
     Petitioner,      )
                      )
     V.               )          Civil Action No.  04-12717-RCL
                      )
DAVID NOLAN,          )
                      )
     Respondent.      )

PETITION FOR HABEAS CORPUS
ATTACHMENT

A.   Ground One:   The convictions were unlawfully affirmed

through the non-strategic omission of meritorious grounds

from direct appeal by incompetent and ineffective appellate

counsel in violation of petitioner's Sixth and Fourteenth

Amendment rights and rights secured under Article 12 of

the Massachusetts Declaration of rights.

     Supporting facts:   Although for years prior to peti-

tioner's 1992 trial the case law in Massachusetts made clear

that the errors asserted in ground two and three of this

petition warranted relief from conviction, appellate counsel

on direct appeal omitted these meritorious grounds from

his brief, thereby causing petitioner the loss of an other-

wise available substantial ground of defense and forcing

him to have to seek SJC gatekeeper permission to bring

these appellate grounds to the full bench.   These grounds,

particularly when viewed under the collective error standards,

were significantly stronger than the grounds actually raised

by appellate counsel, and more likely to result in the

reversal of the convictions at issue.   Due to appellate

counsel's ineffectiveness, the second and third grounds raised herein could not be brought in petitioner's first habeas corpus petition.

Specifically, appellate counsel's failure to argue on direct appeal that the prosecutor's mistatement of the burden of proof during his closing argument was prejudicial, and trial counsel ineffective for not objecting thereto and seeking a mistrial, curative instructions or other remedial measures, constituted ineffective assistance of appellate counsel. Appellate counsel's failure to argue on direct appeal that the trial judge's exacerbation of the prosecutor's mistatement of the burden of proof, by his erroneous instruction on the issue, also warranted appellate relief, constituted ineffectiveness of appellate counsel.

Appellate counsel's failure to argue on direct appeal that trial counsel was ineffective for failing to object to the mistatement of the burden of proof by the prosecutor, and the incorrect definition of same by the trial judge, as well as trial counsel's non-strategic failure to prepare defendant to testify, to interview witnesses and to call the state's main witness's mother to testify, constituted ineffectiveness of appellate counsel as well.

B.  Ground Two: The convictions were unlawfully obtained by two related mistatements of proof beyond a reasonable doubt in prosecutor's closing argument and in the jury instructions, in violation of the Sixth and Fourteenth

-2-

Amendments and Article 12 of the Massachusetts Declaration
of rights.

Supporting Facts: Because the prosecutor during closing
statements mistated the burden of proof, and the trial judge
compounded the error by himself giving an incorrect definition
of what constitutes proof beyond a reasonable doubt, peti-
tioner received an unconstitutional trial in violation of
rights secured to him by the Sixth and Fourteenth Amendments
to the United States Constitution and Article 12 of the
Massachusetts Declaration of rights.

C.   Ground Three: The conviction was unlawfully obtained
through multiple non-strategic omissions by incompetent
ineffective counsel at trial in violation of the Sixth and
Fourteenth Amendments and Article 12 of the Massachusetts
Declaration of rights.

Supporting Facts: Through trial counsel's non-strategic
failure to object to the improper and prejudicial mistatement
of the burden of proof by the prosecutor during his closing,
and the exacerbation of the error by the trial judges who
gave an incorrect and prejudicial definition of proof beyond
a reasonable doubt, as well as his failure to prepare the
defendant to testify, to interview witnesses and to call
the main state witness's mother to testify that he was with
her at the time of the alleged crimes, trial counsel ren-
dered ineffective assistance in violation of petitioner's
Sixth and Fourteenth Amendment rights and Article 12 of
the Massachusetts Declaration of rights.

-3-

D.    Ground Four:    The conviction was unlawfully obtained by the prosecution's knowing and deliberate presentation of false testimony and concealment of exculpatory evidence in violation of the Fourteenth Amendment and Artikcle 12 of the Massachusetts Declaration of rights.

Supporting Facts:   Because the prosecutor knowingly and deliberately presented false testimony to the jury and concealed evidence that was clearly exculpatory in nature (i.e. a bail releease deal with the key prosecution witness who was a co-defendant in the case), the convictions at issue were unlawfully obtained in violation of rights secured to petitioner by the Fourteenth Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of rights. See affidavit of Jose Pacheco, and attached New Trial Motion, incorporated herein by references.

For the foregoing reasons, the petition for writ of habeas corpus should be granted.

Respetcfully submitted,

Dated: December 20, 2004

*Luis P. Rivera*

Luis Rivera, pro se
Box 100
South Walpole, MA 02071

## VERIFICATION

I Luis Rivera declare under the pains and penalties of perjury that the foregoing is true and correct to the best of my personal knowledge.

Dated: December 20, 2004

*Luis P. Rivera*

Luis Rivera

4



# *Suffolk County Sheriff's Department*



Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

DREA J. CABRAL
SHERIFF

Michael J. Sullivan, Esq.
U.S. Attorney for Massachusetts
One Courthouse Way, Suite 9200
Boston, MA 02210

> Re:  U.S. v. Fredrick Grey, aka Freddy Grey, aka King Free, U.S.
> District Court No. 06CR10271-RGS; Defendant's DOB: 5/21/79;
> Defendant's SSN: 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; FBI File Nos. 245D-BS-96365 and
> 823038FB3.

Dear Mr. U.S. Attorney:

Relative to the above-described defendant, enclosed please find a
request for immediate disposition pursuant to the Interstate Agreement
on Detainers (IAD). An original and a photocopy are enclosed. Please
forward the photocopy to the federal government's IAD Coordinator.

To coordinate extradition with someone at this end, please contact
Jennifer Morris, Records Supervisor, (617) 635-1000 x2181.

Thank you for your attention to this matter.

Very truly yours,

November 28, 2007

James T. McDavitt

James T. McDavitt, Esq.
Inmate Legal Services
Suffolk County House of Correction
20 Bradston Street
Boston, MA 02118
617-635-1000 x2178

cc: IAD Coordinator, Mass. Dept. of Corr., 50 Maple Street, Suite 3, Milford, MA, 01757
   Clerk for Criminal Business,  U.S District Court, One Courthouse Way, Boston MA
02210
   John M. Woudenberg, Supervisory Special Agent, c/o FBI, One Center Plaza, Suite
600, Boston, MA 02108
   Inmate/Defendant, c/o SCHC (#0703099)
   Records Division, SCHC;
   File

**FORM 2**
# AGREEMENT ON DETAINERS

Five copies, if only one jurisdiction within the state involved has an indictment, information or complaint pending. Additional copies will be necessary for prosecuting officials and clerks of court if detainers have been lodged by other jurisdictions within the state involved. One copy should be retained by the prosecuting official should be retained by the warden. Signed copies must be sent to the Agreement Administrator of the state which has the prisoner incarcerated, the prosecuting official of the jurisdiction which placed the detainer, and the clerk of the court which has jurisdiction over the matter. The copies for the prosecuting officials and the court must be transmitted by certified or registered mail, return receipt requested.

## Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints

## TO:    Michael J. Sullivan, U.S Attorney for Mass., One Courthouse Way, Suite 9200, Boston, MA 02210

And to all other prosecuting officers and courts of jurisdictions listed below from which indictments, informations or complaints are pending.

# YOU ARE HEREBY NOTIFIED that the undersigned is now imprisoned in:

**SUFFOLK COUNTY HOUSE OF CORRECTION**
**20 BRADSTON STREET, BOSTON, MA 02118**
**ATTN: RECORDS DEPARTMENT**
**(617) 635-1000 x2181**

And I hereby request that a final disposition be made of the following indictments, informations or complaints now pending against me:

## U.S. District Court Dkt. No. 06CR10271-RGS (Possession of Controlled Substance With Intent to Distribute (to counts); Punishment As A Principal (two counts); Conspiracy (one count); in violation of U.S. Code, Title 21, sections 841 (a) (1) (two counts) and 846 (one count), and Title 18, Section 2 (two counts)

Failure to take action in accordance with the Agreement on Detainers, to which your state is committed by law, will result in the invalidation of the indictments, informations or complaints.

I hereby agree that this request will operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against me from your state. I also agree that this request shall be deemed to be my waiver of extradition with respect to any charge or proceeding contemplated hereby or included herein, and a waiver of extradition to your state to serve any sentence imposed upon me, after completion of my term of imprisonment in this state. I also agree that this request shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purposes of the Agreement on Detainers and a further consent voluntarily to be returned to the jurisdiction in which I am now confined.

If jurisdiction over this matter is properly in another agency, court, or officer, please designate the proper agency, court or officer and return this form to the sender.

The required Certificate of Inmate Status and Offer of Temporary Custody are attached.

_____ November 28, 2007
**Fredrick Grey aka Freddy Grey aka King Free**
**Booking Number 0703099**
Suffolk County House of Correction
20 Bradston Street
Boston, MA 02118

The inmate must indicate below whether he/she has counsel or wishes the court in the receiving state to appoint counsel for purposes of any proceedings preliminary to trial in the receiving state that may take place before his/her delivery to the jurisdiction in which the indictments, informations or complaints are pending. Failure to list the name and address of counsel will be construed to indicate the inmate's consent to the appointment of counsel by the appropriate court in the receiving state.

A. I have no counsel and would like counsel appointed.

I have read the above or have had the above read and explained to me and I understand its meaning and agree thereto.

_____ November 28, 2007
**Fredrick Grey aka Freddy Grey aka King Free**
**Booking Number: 0703099**
Suffolk County House of Correction
20 Bradston Street
Boston, MA 02118

_____ November 28, 2007
Witness: **James T. McDavitt, Esq.**
**Inmate Legal Services**
Suffolk County House of Correction
20 Bradston Street
Boston, MA 02118
617-635-1000 x2178

## FORM 3
## AGREEMENT ON DETAINERS

In the case of an inmate's request for disposition under Article III, copies of this Form should be attached to all copies of Form 2. In the case of a request initiated by a prosecutor under Article IV, a copy of this Form should be sent to the prosecutor upon receipt by the warden of Form 5. Copies also should be sent to all other prosecutors in the same state who have lodged detainers against the inmate. A copy may be given to the inmate.

# CERTIFICATE OF INMATE STATUS

**RE:  Fredrick Grey aka Freddy Grey aka King Free**
        **Booking Number: 0703099**
        Suffolk County House of Correction
        20 Bradston Street
        Boston, MA 02118

## The Superintendent hereby certifies:

1.    The term of commitment under which the
       above named is being held: (913) days

2.    The time already served: (249) days

3.    Time remaining to be served on the sentence:
       (642) days (inmate has 22 days Earned Good Time)

4.    The possible good time discharge date: 4/21/09

5.    The date of parole eligibility of the prisoner: 6/23/08

6.    The decisions of the Board of Parole relating to the
       prisoner: N/A

7.    Maximum expiration date under present sentence(s):    8/31/09

8.    The detainer currently on file against the inmate, from your
jurisdiction, is:  detainer issued in U.S. District Court No. 06CR10271-
RGS.

                                          Sheriff Andrea J. Cabral

Nov. 28, 2007            By:  _____
                                          Gerard Horgan, Supt.

## FORM 4
## AGREEMENT ON DETAINERS

In the case of an inmate's request for disposition under Article III, copies of this Form should be attached to all copies of Form 2. In case of a request initiated by a prosecutor this Form should be completed after the Governor has indicated his approval of the request for temporary custody or after the expiration of the 30 day period. Copies of this Form should be sent to all officials who previously received copies of Form 3. One copy also should be given to the prisoner and one copy should be retained by the warden. Copies mailed to the prosecutor should be sent by certified or registered mail, return receipt requested.

### OFFER TO DELIVER TEMPORARY CUSTODY

TO: **Michael J. Sullivan, U.S. Atty. for Mass., One Courthouse Way, Suite 9200, Boston MA 02210**

And to all other prosecuting officers of jurisdictions listed below from which indictments, informations or complaints are pending.

RE:    **Fredrick Grey aka Freddy Grey aka King Free**
     **Booking Number:**      **0703099**
     Suffolk County House of Correction
     20 Bradston Street
     Boston, MA 02118

Dear Sir/Madam:

Pursuant to the provisions of Article V of the Agreement on Detainers between this state and your state, the undersigned hereby offers to deliver temporary custody of the above-named prisoner to the appropriate authority in your state in order that speedy and efficient prosecution may be had of the indictment, information or complaint which is described in the attached inmate's request.

The Certificate of Inmate Status is enclosed.

If proceedings under Article IV(d) of the Agreement are indicated, an explanation is attached.

Indictments, informations or complaints charging the following offenses are also pending against the inmate in your state and you are hereby authorized to transfer the inmate to custody of appropriate authorities in these jurisdictions for purposes of disposing of these indictments, information and complaints.

Offense: N/A                              County or Other Jurisdiction:

If you do not intend to bring the inmate to trial, will you please inform us as soon as possible.

Sheriff Andrea J. Cabral

November 28, 2007                     By: _____

**Gerard Horgan, Superintendent**
Suffolk County House of Correction
20 Bradston Street
Boston, MA 02118