# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                )
LUIS RIVERA,                    )
                                )
        Petitioner,             )
                                )
v.                              )       Civil Action No. 04-12717-RCL
                                )
DAVID NOLAN,                    )
                                )
        Respondent.             )
_____)

## RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MEMORANDUM REGARDING 28 U.S.C. § 2244(d)(1)(D)

### Introduction

The respondent, David Nolan, respectfully submits this memorandum of law in opposition to the memorandum filed by the petitioner, Luis Rivera, on the issue of whether the petition is time-barred under the provisions of 28 U.S.C. § 2244(d)(1)(D). As grounds for this opposition, the respondent states that the factual bases of the claims asserted in Grounds One through Three of the petition for a writ of habeas corpus were known to the petitioner at latest by the conclusion of his direct appeal in 1998. These claims are, therefore, barred by AEDPA's one-year statute of limitations. (Indeed, the alleged newly-discovered evidence which the petitioner presents in connection with his habeas petition has no bearing at all on the first three claims asserted in the petition.)

As to the claim asserted in Ground Four of the petition, which is based on statements allegedly discovered in 2003, the petitioner has not met his burden of showing that he filed his petition within one year of the time that the facts which form the basis of this claim could have

been discovered through the exercise of due diligence.  Accordingly, this claim, like the others in the petition, must be dismissed as untimely under the applicable statute of limitations.

## Background

The petition for a writ of habeas corpus presents four grounds for relief.  In Ground One of the petition, the petitioner asserts ineffective assistance of appellate counsel because appellate counsel failed to argue on direct appeal the following points: "that the prosecutor's misstatement of the burden of proof during his closing argument was prejudicial, and trial counsel [was] ineffective for not objecting thereto and seeking a mistrial, curative instructions or other remedial measures"; "that the trial judge's exacerbation of the prosecutor's misstatement of the burden of proof, by his erroneous instruction on the issue"; and "that trial counsel was ineffective for failing to object to the misstatement of the burden of proof by the prosecutor, and the incorrect definition of same by the trial judge, as well as trial counsel's non-strategic failure to prepare defendant to testify, to interview witnesses and to call the state's main witness's mother to testify."  Petition, p. 2.

In Ground Two of the petition, the petitioner asserts that his "convictions were unlawfully obtained by two related misstatements of proof beyond a reasonable doubt in [the] prosecutor's closing argument and in the jury instructions, in violation of the Sixth and Fourteenth Amendments and Article 12 of the Massachusetts Declaration of Rights."  Petition, pp. 2-3.

In Ground Three of the petition, the petitioner alleges ineffective assistance of trial counsel, claiming that trial could failed to "object to the improper and prejudicial misstatement of the burden of proof by the prosecutor during his closing" and to the judge's instruction on the issue of the burden of proof and failed to "prepare the defendant to testify, to interview witnesses

2

and to call the main state witness's mother to testify." Petition, p. 3.

Ground Four of the petition rests on the assertion that the petitioner's "conviction was unlawfully obtained by the prosecution's knowing and deliberate presentation of false testimony and concealment of exculpatory evidence." The petitioner claims that "the prosecutor knowingly and deliberately presented false testimony to the jury and concealed evidence that was clearly exculpatory in nature (*i.e.*, a bail release deal with the key prosecution witness who was a co-defendant in the case)." Petition, p. 4. The petitioner supports the claim advanced in Ground Four of the petition by reference to affidavits of Jose Pacheco, dated September 15, 2002, May 10, 2003, and October 7, 2003, which the petitioner claims to have received in 2003. *Id.*, and attachments thereto; *see also* Petitioner's Memorandum Setting Forth the Facts and Law of the Petitioner's 2244(d)(1)(D) Claim.

<u>**Argument**</u>

**I.      The Petition Should be Dismissed Because the Factual Basis of the Claims Asserted in Grounds One Through Three of the Petition Was Indisputably Known to the <u>Petitioner By the Conclusion of His Direct Appeal.</u>**

The first three grounds of the habeas petition state claims of ineffective assistance of appellate and trial counsel (Grounds One and Three) and misstatements in the closing arguments and jury instructions (Ground Two). The petitioner does not allege, nor could he show, that the facts underlying these claims were not known or knowable to him as of the time his direct appeal was completed. As to these claims, then, the one year limitation period began to run when the Supreme Court denied the petitioner's petition for a writ of certiorari on October 13, 1998, and expired on October 13. S*ee* 28 U.S.C. § 2244(d)(1)(A). Since the petitioner did not file his petition until December 28, 2004, more than five years after the expiration of the time to file the

petition, the first three claims, at least, are untimely and must be dismissed.[1]  *See* 28 U.S.C. §

2244(d)(1)(A); *see also David v. Hall*, 318 F.3d 343, 344 (1st Cir. 2003)*; Lattimore v. DuBois,*

311 F.3d 46, 53-54 (1st Cir. 2002); *Gaskins v. Duval,* 183 F.3d 8, 9-10 (1st Cir. 1999).

**II.    The Petition Must Be Dismissed As Outside the Statutory Limitations Period Where the Petitioner Has Not Met His Burden of Showing That the Petition Was Filed Within One Year of the Date on Which the Factual Predicate of Ground Four of the Petition Could Have Been Discovered Through the Exercise of Due Diligence.[2]**

The petitioner claims, in Ground Four of his petition, that his conviction was obtained by

the use of witness testimony which was known to be false by the prosecution.  *See* Petition,

attachment p. 4.  The petitioner claims that Jose Pacheco, who testified against him, testified

pursuant to a cooperation agreement with the prosecution which was not disclosed to defense

counsel.  *Id.*; *see also* Affidavits of Jose Pacheco dated September 15, 2002, May 10, 2003, and

October 7, 2003 (hereinafter, "Pacheco Affs."), attached hereto as Exhibit B.  The petitioner cites

Pacheco's affidavits for the proposition that Pacheco's trial testimony about witnessing the

petitioner commit two murders was false.  *Id.; see also* Petitioner's Memorandum Setting Forth

the Facts and Law of the Petitioner's 2244(d)(1)(D) Claim.  In his affidavits, Pacheco states that

---

[1]    While beyond the scope of the Court's order for this memorandum, the respondent would also note that Grounds One through Three of the petition do not appear to have been exhausted in state court.  Indeed, the petitioner conceded as much in his memorandum to the First Circuit Court of Appeals in support of his request for a certificate of appealability.  *See* Petitioner/Appellant's Memorandum in Support of Motion for a Certificate of Appealability, p. 6, attached hereto as Exhibit A.  In the event that this Court declines to order dismissal of the complaint on the basis of the statute of limitations, the respondent reserves the right to move for dismissal on the grounds of failure to exhaust. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982).

[2]    The statute of limitations provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2244(d), provides that  a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. 2244(d)(1)(D).

contrary to his trial testimony, Pacheco never witnessed the petitioner commit the murders.  *See* Pacheco Affs., Exhibit B.  The petitioner avers that he first received Pacheco's affidavits in 2003.  *See* Petitioner's Memorandum Setting Forth the Facts and Law of the Petitioner's 2244(d)(1)(D) Claim, pp. 1-2.

The petitioner does not, however, offer any statement of what efforts, if any, he made to try to discover the information contained in the Pacheco affidavits at an earlier stage.  He does not say what efforts he and/or his counsel made to interview Pacheco prior to trial, or whether his counsel sought to challenge Pacheco's testimony at trial.  He does not state a factual basis for the claim that the prosecution knew Pacheco's testimony to be false, and Pacheco's affidavits do not say that the prosecutor knew that Pacheco was giving false testimony.  *See* Pacheco Affs., Exhibit B.  The burden is on the petitioner to demonstrate that he exercised due diligence in discovering the facts which he alleges underlie his habeas claims. *See Brooks v. McKee*, 307 F.Supp.2d 902, 906 (E.D. Mich. 2004)(citing *Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir. 2002)).

Moreover, the affidavit of Charles K. Stephenson, Esq., who served as counsel to Pacheco in connection with the crimes at issue in this petition, indicates that Pacheco was released on bail and appeared at trial "as a civilian witness, not in custody or restraints." *See* Affidavit of Charles K. Stephenson (hereinafter, "Stephenson Aff."), attached hereto as Exhibit C, ¶ 8. Atty. Stephenson assumed "that the other defense lawyers [including, necessarily, the petitioner's] were aware of that circumstance and attempted to exploit it" in defending their clients.  *Id.*  Since the record suggests that the petitioner's counsel should reasonably have been aware of any bail agreement which served as an inducement to Pacheco, the petitioner cannot show that his current claim that Pacheco had been offered favorable bail as an inducement by the

prosecution is brought within one year of the time it could have been discovered through due

diligence.  *See Wood v.* Spencer, 487 F.3d 1 (1st Cir. 2007)("[W]e are concerned less with what

[the petitioner's] counsel believed and more with what knowledge fairly may be imputed to

him"); *see also Schlueter v. Varner,* 384 F.3d 69 (3d Cir. 2004), *cert. denied*, 125 S.Ct. 2261,

544 U.S. 1037 (2005).

Just as importantly, the information in Pacheco's affidavits is inherently incredible, and

thus may not reasonably form the basis for a habeas claim.  As the petitioner himself

acknowledges, Justice Daniel A. Ford of the Massachusetts Superior Court, who was the judge

on both the petitioner's trial and his motion for a new trial found Pacheco's newly-offered

testimony incredible, stating "I have a fairly clear memory of the witness Jose Pacheco's

testimony, having heard it twice – both at [the petitioner's] trial and at the trial of a co-defendant,

Iran Diaz.  I simply do not believe his [Pacheco's] alleged recantation, having given the matter

serious consideration." *See* Petitioner/Appellant's Memorandum in Support of Motion for a

Certificate of Appealability, p. 3., attached hereto as Exhibit A (emphasis added).  The affidavit

from Pacheco's counsel indicates that at the time of the prosecutions counsel had the "impression

that Mr. Pacheco had been an unwilling participant in the offense," which is consistent with

Pacheco's trial testimony and not with his current recantations. *See* Stephenson Aff., ¶ 3, Exhibit

C; Pacheco Affs., Exhibit B.  Furthermore, Pacheco's trial counsel stated that "at no time in my

presence did Mr. Safford [the assistant district attorney prosecuting the crimes] make any offers

to Mr. Pacheco, except on their first meeting, when he explained that all he could promise Mr.

Pacheco was that his 'cooperation would be taken into consideration' when his case was

evaluated."  Stephenson Aff., ¶ 7, Exhibit C.  At the time Pacheco made his affidavits he was

incarcerated in the Massachusetts Correctional Institutions at Concord and Cedar Junction. *See*

6

Pacheco Affs., Exhibit B.  In short, the proffered affidavits of Jose Pacheco do not provide a colorable factual basis for a habeas claim which survives the statutory limitations period.

## Conclusion

For the reasons set forth above and in the respondent's motion to dismiss and accompanying memorandum, the respondent respectfully requests that this Court enter an order dismissing this habeas petition with prejudice in its entirety on the grounds that it is time-barred.

Respectfully submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Maura D. McLaughlin
Maura D. McLaughlin (BBO # 634923)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ex. 2857

Dated: January 14, 2008

## Certificate of Service

I hereby certify that on January 14, 2008, I served a copy of the above document to be served via first class mail, postage prepaid, upon Mr. Luis Rivera, petitioner *pro se*, W-52832, P.O. Box 43, Norfolk, Massachusetts 02056.

/s/ Maura D. McLaughlin
Maura D. McLaughlin

7

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

LUIS RIVERA,               )

     PETITIONER/APPELLANT     )

V.                   )     No: 05-2418

                     )     (DC No: 04-cv-12717)

DAVID NOLAN,           )

     RESPONDENT/APPELLEE    )

PETITIONER/APPELLANT'S MEMORANDUM IN SUPPORT
OF MOTION FOR A CERTIFICATE OF APPEALABILITY

Petitioner/Appellant, Luis Rivera (hereinafter "Rivera") respectfully submits the within Memorandum in support of his Motion for a Certificate of Appealability, pursuant to this Court's ORDER entered November 15,2005, and Local Rule 22.1 (b).

INTRODUCTION

[Luis] Rivera was convicted of two counts of first degree murder[1]/ regarding the August 21,1991 shooting deaths of Angel Carcano and Guillermo Santiago at Hampden Superior Court (Daniel A. Ford, J. presiding) on June 29,1992. Said convictions were Affirmed by the Massachusetts Supreme Judicial Court ("SJC") on February 13,1997, rejecting Rivera's appellate claims that (1) the trial court improperly denied his Motion to Suppress; (2) the Commonwealth improperly interfered with his right to interview witnesses; (3) the Judge erred in admitting evidence regarding

---

[1]/   Rivera was also convicted of one count of unlawful carrying of a firearm.

a drug organization of which the [defendant] was not a member; (4) the prosecutor made improper prejudicial statements during his closing argument; and (5) the Judge erred in refusing to instruct the jury regarding the Commonwealth's failure to test for gunpowder residue. Commonwealth vs. Rivera, 424 Mass. 266 (1997).

Following the denial of his direct appeal, Rivera submitted a timely pro-se Petition for Writ of Habeas Corpus to the U.S. District Court[2/] pursuant to 28 U.S.C. § 2254 on January 20,1998 (C.A. No: 98-cv-10157, Rivera v. Bissonette, et al.) raising the following grounds: (ONE) erroneous denial of Motion to Suppress [Petitioner's] statements; (TWO) erroneous denial of right to interview witnesses; (THREE) erroneous admission of prejudicial evidence; (FOUR) improper closing statements by prosecutor; (FIVE) violation of right to counsel and right to remain silent; and (SIX) ineffective assistance of counsel.

On May 6,2000 the Honorable Mark L. Wolf dismissed said Petition without prejudice on the ground that Rivera had not exhausted his state remedies on all grounds.

Subsequent to Judge Wolf's ruling, Rivera diligently researched issues in his case which could provide grounds for relief. On November 10,2003, Rivera filed a Motion for a New Trial in Hampden Superior Court pursuant to Mass.R.Crim.Proc. 30 (b) alleging (1) ineffective assistance of appellate counsel; (2) misstatements of the meaning of reasonable doubt by the prosecutor and trial Judge; (3) ineffective assistance of trial counsel for his failure to prepare the [defendant] to testify, and

---

2/    During the pendency of his 28 U.S.C. § 2254 Petition, Rivera Petitioned the United States Supreme Court for a Writ of Certiorari on July 6,1998. Rivera v. Massachusetts, 525 U.S. 934 (1998). Said Petition was denied on October 13,1998.

failing to object to obvious closing argument and instructional error; and (4) issues of the state's main witness revealing previously undisclosed and concealed deals, while recanting perjured trial testimony.

On November 20,2003 the Honorable Daniel A. Ford <u>denied</u> Rivera's Motion, endorsing it as follows: "I have a fairly clear memory of the witness Jose Pacheco's testimony<u>3/</u>, having heard it twice - both at this trial and at the trial of a co-defendant, Iran Diaz.  I simply do not believe his alleged recantation<u>4/</u>, having given the matter serious consideration. see <u>Commonwealth</u> v. <u>Raymond</u>, 424 Mass. 382,397 (1997).  The other allegations set forth herein do not raise a substantial issue requiring an evidentiary hearing.  Therefore, the motion is denied without a hearing."  Rivera's Notice of Appeal from this ruling was filed on March 9,2004.<u>5/</u>

Rivera next submitted an Application for Leave to Appeal the denial of his Motion for a New Trial with a Single Justice of the SJC pursuant to M.G.L. c.278 § 33E.  This case was entered on the Court's docket on August 5,2004<u>6/</u> (No: SJ-04-0338), and on December 20,2004, Justice Francis X. Spina <u>denied</u> said Application for Leave to Appeal.<u>7/</u>

---

<u>3/</u>    Jose Pacheco testified at Rivera's trial that he was ordered (on pain of threat to his and his family's safety) to drive the [defendant], and a co-defendant, Iran Diaz, to the scene of the murders.  Pacheco testified (as an eyewitness for the state) that the victims were dragged from the vehicle, and that Rivera shot one victim in the chest.  That victim died within minutes.  The other victim attempted to flee, and Diaz shot him in the back.  The victim fell to the pavement but was still alive and trying to crawl away.  Rivera alerted Diaz, and Diaz then shot the victim several times.  <u>Commonwealth</u> v. <u>Rivera</u>, 424 Mass. at 268, supra.

<u>4/</u>    On October 7,2003 Pecheco signed a sworn affidavit recanting his trial testimony (please see <u>EXHIBIT #1</u> attached hereto).  Pacheco's recantation is supported by the affidavits of Francis Pabon, and Charles K. Stephenson, <u>EXHIBITS #2</u>, <u>#3</u> attached hereto respectively).

Having exhausted all of his state remedies regarding the newly discovered evidence of Jose Pacheco's recantation and nondisclosure of concealed deals by the Commonwealth, Rivera filed a Petition for Writ of Habeas Corpus in the U.S. District Court pursuant to 28 U.S.C. § 2254 on December 8,2004 arguing the following grounds: (ONE) ineffective assistance of appellate counsel by omission of meritorious appellate grounds on direct appeal; (TWO) conviction unlawfully obtained due to two related misstatements of proof beyond a reasonable doubt in prosecutor's closing argument and jury instructions; (THREE) ineffective assistance of trial counsel for failure to object and failure to call necessary witnesses for defense; and (FOUR) the conviction was unlawfully obtained by prosecutor's knowing and deliberate presentation of false testimony and concealment of exculpatory evidence which violated [Petitioner's] sixth and fourteenth Amendment rights (please see EXHIBIT #7 attached hereto).

---

5/ This Notice of Appeal was filed late due to the fact that Judge Ford's ruling was not mailed to Rivera until March 1,2004 (please see EXHIBIT #4 attached hereto).

6/ Rivera's Application was approved for late filing by Justice Martha B. Sossman sitting as Single Justice on September 16,2004, on the grounds that Rivera did not receive a timely copy of the Superior Court's denial of his Motion for a New Trial. Although Rivera's Application was not docketed until August 5,2004, Rivera did submit said request to the Court on April 2,2004 (please see EXHIBIT #5 attached hereto), thereby complying with the 30-day filing requirements of M.G.L. c.278 § 33E.

7/ It is significant to point out that Justice Spina was the Superior Court Judge who dismissed murder and related charges against Jose Pacheco (Pacheco was one of the four men, including Rivera that were indicted for the murders of Angel Carcano and Guillermo Santiago. Iran Diaz and Raymond Rios Rebello were the other two co-defendant's charged). (please see EXHIBIT #6 attached hereto).
In light of these facts, Rivera respectfully submits that Justice Spina should have recused himself, sua sponte, thereby eliminating any impropriety.

On June 17,2005 the Honorable Justice Reginald C. Lindsay dismissed the above referenced Petition at the request of Respondent/Appellee on the sole ground that the Petition was time-barred, and entered Judgment for the Respondent (please see EXHIBIT #8 attached hereto).

Rivera subsequently filed a Motion for Reconsideration of Judge Lindsay's decision on July 12,2005 arguing that [his] Petition for Writ of Habeas Corpus could not be time-barred based on the "equitable tolling" provisions of 28 U.S.C. § 2244 (d)(1)(2).  The Court denied this motion on September 8,2005 and Rivera submitted a timely Notice of Appeal (please see EXHIBIT #9 attached hereto).

The Record on Appeal was forwarded to this Court by the U.S. District Court Clerk's Office on September 22,2005, and this Court subsequently issued an ORDER to Rivera on September 28,2005 directing him to file an Application for Certificate of Appealability with the District Court within 30 days of the Court's order.

On October 6,2005 Rivera filed an Application for the Issuance of a Certificate of Appealability with the U.S. District Court as directed. Justice Lindsay subsequently denied said request on October 28,2005, relying on his June 17,2005 Memorandum and Order on Respondent's Motion to Dismiss as reasons therefore.8/

Following the above, this Court entered an ORDER to Rivera on November 15,2005, directing him to file (1) a Motion for Leave to Appeal in Forma Pauperis with the District Court (which Rivera did on November 22,2005), (2) a Memorandum in support of [his] Application for a

---

8/   For whatever reason(s), Rivera never received notice of this ruling from the District Court.  This fact is evidenced by the content of Petitioner/Appellant's Notice to Court #2 filed with this Court.

Certificate of Appealability in the [U.S. Court of Appeals] by December 5,2005.

Rivera now respectfully submits said Memorandum.

<u>ISSUES PRESENTED</u>

I. DID THE DISTRICT COURT ERR IN DISMISSING PETITIONER/APPELLANT'S PETITION FOR WRIT OF HABEAS CORPUS AS TIME-BARRED WHERE PETITIONER/ APPELLANT RELIED ON THE "EQUITABLE TOLLING" PROVISIONS OF 28 U.S.C. § 2244 (d)(1)(2) AS GROUNDS FOR FILING SAID PETITION APPROXIMATELY SEVEN YEARS AFTER PETITIONER/APPELLANT'S CONVICTIONS WERE AFFIRMED BY THE MASSACHUSETTS SUPREME JUDICIAL COURT?

II. SHOULD THIS HONORABLE COURT ISSUE A CERTIFICATE OF APPEALABILITY WHERE PETITIONER/APPELLANT HAS PRESENTED ISSUES THAT ARE DEBATABLE AMONG JURISTS OF REASON, AND MADE A SPECIFIC AND SUBSTANTIAL SHOWING OF A DENIAL OF HIS CONSTITUTIONAL RIGHTS?

<u>DISCUSSION</u>

<u>At</u> the outset of Discussion, [Luis] Rivera respectfully concedes that for appellate purposes, and in the interests of judicial economy and efficiency, grounds <u>ONE</u>, <u>TWO</u>, and <u>THREE</u> of his December 28,2004 Petition for Writ of Habeas Corpus are hereby **WAIVED** where Rivera admittedly did not exhaust said claims to the courts in a timely manner.  With respect to ground <u>FOUR</u> as raised in the Petition however, Rivera respectfully submits that said ground was in fact timely presented to the state and federal courts, and as such is ripe for appellate review as argued below.

I.  As noted above, the District Court dismissed Rivera's December 28, 2004 Petition for Writ of Habeas Corpus on the sole ground that the Petition was time-barred.  The Court reached this conclusion because Rivera was <u>denied</u> his Application for Writ of Certiorari by the U.S. Supreme Court on October 13,1998 (thereby finalizing Rivera's convictions for purposes

of 28 U.S.C. § 2244 deadlines), and Rivera did not file his Petition for Writ of Habeas Corpus until "more than five years after the expiration of the period of limitations." Id.  The Court went on to conclude that Rivera was erroneously suggesting that the November 10,2003 filing of his Motion for a New Trial in the state Superior Court offered him a reprieve from AEDPA's 1-year filing deadline.

With all due respect to the District Court, Rivera respectfully submits that Justice Lindsay totally ignored the relevant claims advanced by Rivera as to why his Petition for Writ of Habeas Corpus could <u>not</u> be time-barred.

In his Motion for Reconsideration of the dismissal of his habeas petition, Rivera stated that he was relying on the "equitable tolling" provisions of 28 U.S.C. § 2244 (D)(!)(@) as grounds for a timely filing of his December 28,2004 Petition for Writ of Habeas Corpus.  Rivera respectfully argues that this was proper where he did not receive the affidavit of Jose Pacheco until at least some time <u>after</u> October 7,2003 when said affidavit was signed, notarized, and mailed to Rivera by Pacheco.

Rivera's Motion for a New Trial filed with the state Superior Court on November 10,2003 clearly supports that Rivera presented his <u>Brady</u><u>9/</u> claims and Due Process violations regarding the prosecutor's knowing and deliberate presentation of false testimony at the first opportunity he had.<u>10/</u>  After the trial Judge blatantly ignored the very serious claims

---

9/    <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83,87 (1963).

10/   Upon receiving the affidavit of Jose Pacheco through the mail, Rivera immediately sent a copy of said affidavit to the Committee for Public Counsel Services ("CPCS") with a request that counsel be assigned to investigate the validity of Pacheco's claims, and how this new information would affect Rivera's post-conviction claims.  CPCS screening counsel ultimately dismissed this issue as having no merit and Rivera was forced to present his claims to the trial court pro-se.

before it[11]/, Rivera continued exhausting his state remedies by petitioning a Single Justice of the SJC for Leave to Appeal the denial of his Motion for a New Trial.  As soon as relief there was _denied_ by Justice Francis X. Spina, Rivera filed his 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus in the U.S. District Court within **8 days** of that decision.  Based on these facts, Rivera's December 28,2004 Petition for Writ of Habeas Corpus was filed well within the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244 (d)(1).


   II.  To obtain a Certificate of Appealability under 28 U.S.C. § 2253 (c)(2) regarding the denial of federal habeas relief, a petitioner is not required to show that he will prevail on the merits, but, rather, that issues are debatable among jurists of reason, or that questions are adequate to deserve encouragement to proceed further.  _Hence_ v. _Smith_, 49 F.Supp. 2d. 547 (ED Mich. 1999).

   In the case at bar, [Luis] Rivera has not only presented issues that are debatable among jurists of reason, he has also made a specific and substantial showing of the denial of his Constitutional rights.  This conclusion is supported by several facts.

---

[11]/  This fact is evidenced by Judge Ford's summary disposition of Rivera's claims in which the Court did not even address the suppression of exculpatory evidence by the Commonwealth.  By contrast, the Honorable Superior Court Justice Constance M. Sweeney ordered an evidentiary hearing _sua sponte_ in co-defendant Raymond Rios Rebello's case on the issue of Jose Pacheco's recantation (Hampden Superior Court docket No: 91-2284-7).

First, as argued above, the District Court erroneously dismissed Rivera's Petition for Writ of Habeas Corpus as time-barred. Second, the October 7,2003 recantation affidavit of Jose Pacheco raises serious question as to the soundness of Rivera's convictions, and clearly supports a viable Brady claim. Third, the facts revealed in Pacheco's post-conviction affidavit would definitely have affected the jury's verdict where the state had absolutely no evidence independent of Jose Pacheco's claimed "eyewitness" accounts to connect Rivera with the murders of Angel Carcano and Guillermo Santiago. Furthermore, had the "deals" 12/ Assistant District Attorney Howard Safford made with Pacheco been known to the defense at the time of trial, counsel could have used this information as material impeachment evidence against Pacheco.

Where, in a case such as this, a Petitioner/Appellant obtains newly discovered evidence which casts real doubt on the justice of his convictions, and Petitioner/Appellant presents his claims of Constitutional error to the courts with due diligence, this Honorable Court should uphold Rivera's arguments that his Petition for Writ of Habeas Corpus was in fact timely filed, and further, that Rivera has made a specific and substantial showing of the denial of his Constitutional rights warranting the grant of a Certificate of Appealability.

---

12/  As noted in paragraph 5 of Jose Pacheco's October 7,2003 affidavit, Assistant District Attorney Howard safford made a verbal agreement with Pacheco that after testifying for the Commonwealth against Rivera and his co-defendant's, Pacheco would be released on low bail, and his own murder and related charges would not be prosecuted. These claims by Pacheco are clearly truthful where the record evidence shows that Pacheco was in fact released on Personal Recognizance, and all charges were ultimately dismissed just like Pacheco claimed ADA Safford said would happen (please see EXHIBIT #6 attached hereto).

<u>CONCLUSION</u>

For all of the reasons stated above, and in the interests of justice, this Honorable Court should grant Petitioner/Appellant's Motion for a Certificate of Appealability, or order such other relief as this Court may deem just and appropriate.


Respectfully submitted by:


Luis Rivera, Petitioner/Appellant
MCI-Norfolk
2 Clark Street, P.O. Box 43
Norfolk, MA 02056-0043


Dated:   November 30,2005

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN COUNTY                                           SUPERIOR COURT
                                                        NO(S) 91-2247-2251

COMMONWEALTH

V.

LUIS FERNANDO RIVERA, JR.

AFFIDAVIT TO RECANT FACTS OF TESTIMONY
I GAVE AT THE DEFENDANT'S TRIAL

I, Jose Pacheco, do hereby swear and attest that the following
facts are true to the best of my knowledge and belief.

I make this affidavit in support of my wish to recant certain
facts I gave in my testimony at the trial of the above named
defendant.

1.  I am presently an inmate incarcerated at M.C.I. Concord.
My inmate identification number is W 70663

2.  At trial, in June of 1992, I testified that the defendant
held a gun to my head because I was running traffic lights and was
likely to call attention my vehicle.  The defendant never held a
gun to my head or to any other part of my person.

3.  At trial, I testified that I witnessed the defendant shoot
Angel Carcano and Guillermo Santiago as I claimed I was at the
scene of this crime.  I was not at this, or any other crime scene,
during the commission of the aforementioned shootings and did not
witness any crime being committed by the defendant.

4.  At trial, I testified that I accompanied the defendant to
the stated crime scene.  I did not as the defendant dropped me off
at my mother's home on Main Street in Holyoke prior to the time

the alleged crime was said to have been committed.

I am willing to testify to the above matters in court and under oath.

Signed and sworn to under the pains and penalties of perjury on this   15th   day of November, 2002, at M.C.I. Concord in Concord, Massachusetts.

_____  9/15/02
JOSE PACHECO

_____  9/15/02
WITNESSED BY

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss                     SUPERIOR COURT DEPARTMENT
                                CRIMINAL DIVISION

                                Docket No.(s) 91-2247-2251

                    Commonwealth

                         v.

              Luis Fernando Rivera, Jr.

          AFFIDAVIT TO RECANT FACT OF TESTIMONY
           I GAVE AT THE DEFENDANT'S TRIAL

     I, Jose Pacheco, do hereby swear and attest that the
following facts are true to the best of my knowledge and
belief.

     I make this affidavit in support of my wish to recant
certain facts I gave in my testimony at the trial of the
above named defendant.

     1. I am presently an inmate incarcerated at M.C.I.
_____, my inmate identification number is
W-70663.

     2. At trial, in June of 1992, I testified that I did
not get a deal or promises for my testimont against the
defendant, when in fact I had a verbal agreement with the
A.D.A. Howard Safford, that after testifiying against the
defendant that I would be released on low bail and would
not face prosecution.

     3. I am willing to testify to the above matters in
Court and under oath. Also, I am willing to take a
Polygraph if all parties agree.  Signed and sworn under
the pains and penalties of perjury on this _16_ day, of _May_
2003, at M.C.I. _Cedar Junction_ in _Walpole_ , _Massachusetts.

                              _____
                              Jose Pacheco, W-70663

                              _____
                              Witnessed by

                              Comm. expire 10/18/2007

Superior Court No.(S)91-2247-2251

COMMONWEALTH

V.

Luis Fernando Rivera, Jr.

<u>AFFIDAVIT TO RECANT FACTS OF TESTIMONY</u>
<u>I GAVE AT THE DEFENDANT'S TRIAL</u>

I, Jose Pacheco, do hereby swear and attest that the following facts are true to the best of my knowledge and belief.

I make this affidavit in support of my wish to recant certain facts I gave in my testimony at the trial of the above named defendant.

1.) I am presently an inmate incarcerated at M.C.I. Walpole. My inmate identification number is W70663.

2.) At trial, in June of 1992, I testified that the defendant held a gun to my head because I was running traffic lights and was likely to call attention to my vehicle. The defendant never held a gun to my head or to any other part of my person.

3.) At trial, I testified that I witnessed the defendant shoot Angel Carcano and Guillermo Santiago as I claimed I was at the scene of this crime. I was not at this, or any other crime scene, during the commission of the aforementioned shootings and did not witness any crime being committed by the defendant.

4.) At trial, I testified that I accompanied the defendant to the stated crime scene. I did not, as the defendant dropped me off at my mother's home on Main Street in Holyoke prior to that time.

5.) At trial, in June of 1992, I testified that I did not get a deal or promises for my testimony against the defendant, when in fact I had a verbal agreement with A.D.A. Howard Safford, that after testifying against the defendant that I would be released on low bail and would not face prosecution.

6.) I am willing to testify to the above matters in Court and under oath. Also, I am willing to take a Polygraph if all parties agree.

Signed and sworn under the pains and penalties of perjury

on this ___7th___ day, of ___October___ 2003, at M.C.I.

Cedar Junction _____ in Walpole _____, Massachusett.

_____
Jose Pacheco, W70663

_____

Witnessed by

Ethel A. Lavalley, Notary
Comm. exp 10/18/2107

C.A. 32

AFFIDAVIT

My name is Charles K. Stephenson.  Under oath, I depose and say that:

1.  I am an attorney licensed to practice in the Commonwealth of Massachusetts.  My Board of Bar Overseers registration number is 479150.  In the early 1990's, I served as appointed counsel to Jose Pacheco, who was one of five or six men who were charged with committing a double murder in Holyoke.

2.  Mr. Pacheco's case was resolved in 1994, and I have destroyed whatever records I originally retained from the case.  For that reason, I have only my memory to rely upon in completing this affidavit.  Although I clearly remember the important events in the case, I cannot recall other details, and I am uncertain as to the precise order of some events; when that is the case, I have tried to so indicate.

3.  From the outset, based on conversations with Mr. Pacheco and the Holyoke police, and my ongoing review of discovery materials, it was my impression that Mr. Pacheco had been an unwilling participant in the offense.  I was appointed to represent Mr. Pacheco on a Sunday afternoon; by the end of the same week, I had called District Attorney Bennett to suggest that he seek an order immunizing Mr. Pacheco from prosecution because he was a witness rather than a co-venturer.  Mr. Bennett did not take my suggestion seriously, and countered that he might consider permitting Mr. Pacheco to plead guilty to second degree murder.  It was not my impression that even that suggestion was in the nature of a serious offer, and it was certainly wholly unacceptable to me, so I decided to pursue a different strategy.

CKS

1

*C.A. 33*

4.  Based on the discovery and my research on the subject of duress, I concluded that although there still exists doubt that Massachusetts courts will recognize that defense in a homicide case (I remember one case was entitled Commonwealth v. Robinson,) it nevertheless would be an appropriate defense to offer on Mr. Pacheco's behalf should his case ever come to trial.  To that end, as the government began preparing their cases for trial and when I was contacted by Howard Safford, I agreed to discuss with Mr. Pacheco whether he would be willing to testify as a witness against his co-defendants.

5.  Although I have been contacted by Attorney Leslie O'Brien, whom I know, and advised that Mr. Pacheco has signed a waiver of his attorney/client privilege, I have not actually seen that waiver, and decline to discuss my communications with Mr. Pacheco in this affidavit; he did, however, appear as a witness in the trials of the other defendants, and in addition to describing the actions of those men, characterized his own participation (as driver) as being forced upon him at gunpoint and on threat of death-- both for himself and for the members of his immediate family, which included his wife and several children.

6.  I believed that, having relied on Mr. Pacheco as its central witness in every trial, and having elicited on each such occasion Mr. Pacheco's testimony that he had acted under extreme duress, the government would be effectively estopped from opposing a duress defense if Mr. Pacheco should ever be brought to trial; it was also my intention, later put into practice, to file a motion to dismiss the indictment against him (a "Brendano" motion,) again premised on the theory that the government could not then reasonably claim Mr. Pacheco had been anything more than a third victim, although one who had avoided being killed.

C.A. 34

7.  While I must have described Mr. Pacheco as a witness/victim in my discussions with Mr. Safford, at no time did I discuss my planned Brendano motion with him.  Although I cannot be certain that I was present on every occasion when Mr. Pacheco discussed the case with Mr. Safford, at no time in my presence did Mr. Safford make any offers to Mr. Pacheco, except on their first meeting, when he explained that all he could promise Mr. Pacheco was that his "cooperation would be taken into consideration" when his case was evaluated.  For the reasons I have explained, I never asked for any further assurances, nor did I ever press to have Mr. Pacheco's case resolved.

8.  It is my best recollection that Mr. Pacheco was still in custody when he first testified, because I remember buying him clothing (although he could have arrived for another trial without suitable clothes.)  At some point before the trials were completed, however, he was released on bail.  Although that action could be construed as "consideration," and the government must have agreed to the reduction or elimination of what was originally a prohibitive bail order, I never made his release a condition for Mr. Pacheco's cooperation; it was a request, not a demand.  In addition, because Mr. Pacheco later appeared as a civilian witness, not in custody or restraints, it is my assumption that the other defense lawyers were aware of that circumstance and attempted to exploit it.

9.  At one point after Mr. Pacheco was released on custody, I remember visiting him the night before he was to testify.  He was staying with his family in a room at the Hampton Inn on Riverdale Street in West Springfield.  I am confident that the government must have paid for that room.  I also recall that he spent at least some of the time between his release and the dismissal of the charges against him somewhere out of the area, although I do not recall whether it was in east/central Massachusetts or Connecticut.  I also have a

3

*C.A. 35*

vague recollection that at some point he
travelled to Puerto Rico, but I have no
memory of the reason, or whether the
government might have borne some or all of
that expense. On one or perhaps two
occasions, when preparing Mr. Pacheco to
testify during an evening meeting, Mr.
Safford or one of his colleagues provided Mr.
Pacheco and me with soft drinks and
sandwiches.


10.  After all of the co-defendants' cases
were tried, I filed my planned motion to
dismiss the indictment.  The motion was heard
by then Superior Court Justice Francis X.
Spina.  My only clear recollection of that
hearing is that after I gave my explanation
of the facts and theory supporting the
motion, Judge Spina asked Mr. Safford if,
having essentially sponsored Mr. Pacheco's
version of events through four trials, he
could then claim that Mr. Pacheco had been a
willing participant.  While I do not recall
Mr. Safford's exact response, he in essence
conceded that he could not make such a claim.
The motion was allowed on the basis of the
theory I argued.



Signed under penalties of perjury, this twenty-ninth

day of October, 2004, at Granby, Massachusetts.

 

_____

Charles K. Stephenson

4