# United States District Court
# District of Massachusetts

LUIS RIVERA,
      Petitioner,

    v.                        CIVIL ACTION NO. 04-12717-RGS

DAVID NOLAN,
      Respondent.

## MEMORANDUM AND RULING ON PETITIONER LUIS RIVERA'S CLAIM THAT HIS PETITION IS TIMELY APPLYING 28 U.S.C. § 2244(d)(1)(D) (#30)[1]

COLLINGS, U.S.M.J.

### I. Introduction

*Pro se* petitioner, Luis Rivera ("petitioner"), who is currently serving two natural life sentences in state prison, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#1), challenging his 1999 state conviction on two

---

[1] This pleading does not set forth a claim, per se, but rather offers arguments to support petitioner's contention that his habeas claims are timely.

counts of murder in the first degree and one count of unlawful possession of a firearm. For the reasons set out below, the court[2] finds that the petitioner's petition for habeas corpus (#1) is not time-barred.

## II. *Procedural Background*

Petitioner filed a Section 2254 petition on December 28, 2005. The respondent, David Nolan, ("respondent") filed a motion to dismiss the original petition as time-barred under 28 U.S.C. § 2244 (d)(1)(A) (#5), and on June 17, 2005, the district court (Lindsay, J.) dismissed the petition as time-barred. Petitioner appealed this decision (#19). On May 16, 2005, the First Circuit Court of Appeals remanded the case to the district court with singular instructions to consider the petitioner's argument with respect to Section 2244(d)(1)(D). This court then requested memoranda from the parties on the above issue (#29). Petitioner and respondent have submitted their briefs (##30, 31 and 33, respectively) and the issue now stands ready for decision.

## III. *Analysis*

The original petition for habeas corpus sets out four grounds for relief. In his memorandum in support of motion for a certificate of appealability,

---

[2] Pursuant to 28 U.S.C. § 636(b)(1)(A), this case has been referred to the undersigned for a ruling on this issue. (*See* Order of Reference, #28)

however, petitioner conceded that the first three grounds were not timely

exhausted in the state court and waived his rights with respect to them.[3] (#31-2

at 6)  Thus the court need  now only consider the fourth and final ground

presented in the petition.

Specifically, the fourth ground for requested relief contends that the

petitioner's conviction was unlawfully obtained through the prosecution's

knowing use of false testimony.  To support his claim, petitioner presents three

affidavits signed by Jose Pacheco ("Pacheco").  Pacheco was a prosecution

witness against petitioner during his trial; his affidavits now offer recantations

of his earlier trial testimony.  Petitioner argues that this new evidence provides

grounds for habeas relief in that the prosecution's failure to disclose the

evidence of inducements, which the petitioner asserts could have been used to

impeach Pacheco, violated his right to due process under *Brady v. Maryland,*

---

[3]

The first three grounds for requested relief each harken to injustices allegedly occurring during petitioner's trial or the appeal directly following, namely: (1) ineffective appellate counsel which failed to argue on appeal that the prosecutor's and trial judge's misstatements concerning the burden of proof to the jury were prejudicial; (2) the aforementioned misstatements were in violation of the Sixth and Fourteenth Amendments and Article 12 of the Massachusetts Declaration of Rights; and (3) ineffective trial counsel evidenced again by the misstatements concerning the burden of proof.  (#1 at 2-3)  Even if petitioner had not himself waived these grounds, this court would now find them time-barred.  Unlike the fourth ground upon which petitioner requests relief, these three grounds offer no newly discovered fact which could trigger an examination of timeliness under § 2244(d)(1)(D).  *See also Libby v. Magnusson*, 177 F.3d 43, 49-50 (1st Cir. 1999).  Because the initial trial or appellate process concluded when the Supreme Court denied petitioner's writ of certiorari on October 13, 1998, these three grounds for relief each fall far short of the one-year time limit set forth under § 2244(a) and are thus necessarily time-barred.

373 U.S. 83 (1963). Petitioner further contends that these recantations bolster his claim of actual innocence because Pacheco now attests that he was not present during the murders for which the petitioner was convicted. (#31-2 at 9)

Because the issue at hand considers petitioner's argument that his habeas claims are timely under Section 2244(d)(1)(D), a time line of events leading from petitioner's receipt of the recantations to the filing of his petition would be helpful. Petitioner claims to have received the first affidavit on or about January 14, 2003[4], the second on or about June 12, 2003, and the third on or about October 7, 2003. (#30 at 1-2) On November 5, 2003[5], petitioner then filed with the state court a motion for a new trial under the Massachusetts Rules of Criminal Procedure, Mass. Crim. P. Rule 30(b). On November 20, 2003, his motion in state court for a new trial was denied. Petitioner then timely appealed that denial. He received notice that this appeal also was denied on

---

[4]

This first affidavit was dated September 15, 2002.

[5]

For the purposes of establishing this time line, the court adopts the dates offered by the petitioner in light of the "mailbox rule." *See Morales-Rivera v. U.S.*, 184 F.3d 109, 109 (1st Cir. 1999) ("a *pro se* prisoner's motion under 28 U.S.C. § 2255 or § 2254 is filed on the date that it is deposited in the prison's internal mail-system for forwarding to the district court, provided that the prisoner utilizes, if available, the prison's system for recording legal mail.") The court notes in passing, however, that petitioner's claim does not depend for its success or failure upon the application of the mailbox rule.

December 17, 2004. Three days later, on December 20, 2004, petitioner mailed his petition for writ of habeas corpus, and his petition was filed with this court on December 28, 2004.

The respondent opposes the petitioner's memorandum, arguing that the claims are time-barred under the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2244(d)(1).[6] Ordinarily, the limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* at § 2244(d)(1)(A). Subparagraphs (B)-(D), however, govern to allow later filings when applicable.

In the case at hand, subparagraph (D) applies. Subparagraph (D) allows the time to begin running on the limitations period from "the date on which the factual predicate of the claim or claims presented could have been discovered

---

[6]

Section 2244(d)(1), provides:
> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

through the exercise of due diligence." *Id.* at § 2244(d)(1)(D).

The petitioner asserts that he discovered the factual predicate of his claims on January 14, 2003, when he received the first affidavit from Pacheco. If the court assumes *arguendo* that this date is the date on which the factual predicate of the claim could have been discovered, then the tolling period for the one-year statute of limitations would have commenced on January 13, 2003. But on November 10, 2003, petitioner filed a motion for a new trial in state court. This action effectively tolled the statute of limitations on his petition at just under 11 months. *See* 28 U.S.C. § 2244(d)(2).[7] The tolling period recommenced upon the exhaustion of his state claims, that is, on December 17, 2004, when his final appeal was denied by the Massachusetts Supreme Judicial Court. A mere three days later, and well within the one-year statute of limitations period, petitioner filed his petition in federal court.

The court must now consider whether the date upon which petitioner received the first affidavit is, in fact, the proper date to commence the one-year statute of limitations period. To wit, the court must determine whether

---

[7]

Section 2244(d)(2) states :

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Pacheco's recantations comprise a newly discovered factual predicate that petitioner could not have discovered earlier.

Pacheco's recantations substantially contradict his trial testimony. In his first affidavit, Pacheco recants his testimony during petitioner's trial concerning his involvement in the two murders. During petitioner's trial, Pacheco claimed to be a witness to petitioner's assassination of the two victims. He testified that the petitioner held a gun to his head and forced him to drive the petitioner and another defendant, along with the two victims, to a deserted location; there, Pacheco witnessed the petitioner and the other defendant shoot and kill the two victims. In his recantation, Pacheco now claims that petitioner never held a gun to his head; that instead of driving them to the scene of the murders, Pacheco was dropped off at his mother's house. As such, he did not witness the murders.

In his second affidavit, Pacheco further attests that he lied under oath about whether he had an agreement with the prosecution in return for his favorable testimony; he now states that he had a verbal agreement with the assistant district attorney that he would be released on low bail and would not face prosecution. His third affidavit is a repetition of these statements. (#30, Exh. 1)

The First Circuit has determined that "[i]n order to qualify for [the Section 2244(d)(1)(D)] exception, a habeas petitioner must show that, exercising due diligence, he could not have learned of the evidence in question at a substantially earlier date." *Wood v. Spencer*, 487 F.3d 1, 4 (1st Cir.), *cert. denied*, 128 S. Ct. 260 (2007). In *Wood*, the petitioner argued that the tolling for purposes of Section 2244(d)(1)(D) should have commenced when he learned post-trial of a conversation that had taken place between a police officer and the victim he was subsequently found guilty of murdering. The petitioner claimed that this conversation, which took place the day before the murder, bolstered his claim of self-defense because in it, the victim angrily told the police officer that he was going to "get" the person who set him up. *Id*. at 2.

In affirming the district court's timeliness determination, the appellate court concluded that the possibility for discovering this factual predicate actually existed during petitioner's state trial and that, indeed, the evidence suggested that his attorney was aware of the evidence but did not pursue it by

interviewing the police officer or calling him as a witness. *Id.* at 5. Citing

*Wood*, respondent in this case contends that, with the exercise of due diligence, the petitioner in this case could have gained the knowledge cited in Pacheco's recantations earlier.

However, unlike *Wood*, in which the petitioner's attorney failed to interview the police officer or call him to testify, the petitioner's attorney here duly cross-examined Pacheco. When asked if he had received any inducements or favors, Pacheco testified that he had not. (#31, Exh. 3 ¶ 2) Without any evidence contradicting Pacheco's testimony, petitioner had no reason to disbelieve him.

Respondent proffers testimony from Pacheco's attorney, Charles Stephenson,  who claims that Pacheco appeared in civilian clothes during petitioner's trial, which could have indicated that a bail arrangement had been made, and that the "other defense lawyers . . . were aware of that circumstance and attempted to exploit it." (#31, Exh. 4, Affidavit of Charles K. Stephenson, ¶ 8)  In his reply, however, petitioner notes that Pacheco was released on bail only *after* petitioner's trial.[8] (#33 at 2)  Thus, respondent's claims that petitioner

---

[8]

In the original indictments, five defendants, including the petitioner and Pacheco, were named. While the court is unable to determine with complete accuracy the exact trial dates for each of the defendants, the record suggests that petitioner was one of, if not the, first to go to trial. The court finds that Pacheco was released on bail only following his testimony against a co-defendant whose trial was held subsequent to petitioner's. After the other defendants were convicted, Pacheco's motion to dismiss

should have been aware *during his trial* of any bail agreement is inapposite.

Expectations about what defines due diligence from behind prison bars must be realistic. Other courts have used a totality of the circumstances test to determine if an imprisoned petitioner's efforts are duly diligent. *See United States v. Loudner*, 203 F. Supp.2d 1083, 1094 (D.S.D., 2002) ("The 'due diligence' requirement should be considered in light of the totality of the circumstances present including the defendant's confinement in prison and any special restrictions that incarceration may impose."). In examining a petitioner's Section 2255 claim, the court in *Loudner* noted that the phrase "due diligence" is not defined anywhere in the AEDPA and that in construing the phrase, several courts have required that the petitioner "show some kind of measure of prudence, activities or assiduity as may be properly expected from and ordinarily exercised by a reasonable and prudent person under the particular circumstances present." *Loudner*, 203 F. Supp.2d at 1094 (citing cases).

The court finds that the petitioner in this case exercised due diligence. Petitioner had no contact with Pacheco while in prison; he had no way of knowing that the charges against Pacheco had been dropped. Indeed, petitioner

---

was granted and the charges against him were dropped.

submits evidence that he requested Pacheco's trial docket in 2001 in an attempt to discover whether any plea had been made following his appearance at petitioner's trial, but his request went unanswered. (#30, Exh. 1) Without such knowledge, it strains the imagination how petitioner could discover Pacheco's recantation before he received it in the mail.

This is not the first time this court has considered whether an imprisoned petitioner has exercised due diligence in attempting to discover a factual predicate for Section 2244(d)(1)(D) purposes. *See Perkins v. Russo*, No. 02-10460, slip op. (D. Mass. Sept. 21, 2006). In *Perkins*, the petitioner discovered new evidence while in prison to support a claim that a witness' testimony during his trial was falsified. There, as in this case, this court rejected the argument that the petitioner should somehow be accountable for ascertaining the veracity of a witness' sworn trial testimony without any reason for so doing. *See id.* at p. 25 (finding that respondent's argument "strains the meaning of due diligence in this context"). *See also Daniels v. Uchtman*, 421 F.3d 490, 491 (7th Cir. 2005) (one-year limitations period on § 2255 claim began to run when witness proffered to petitioner affidavit recanting his trial testimony), *cert. denied,* 546 U.S. 1095 (2006) ; *United States v. Loudner*, 203 F. Supp.2d at

1094-1096 (finding that petitioner discovered factual predicate pertaining to actual innocence only when he learned that witness had recanted trial testimony).

The court does note, however, that its determination as to the timeliness of petitioner's claim might be different  had petitioner received Pacheco's affidavit on the same day that it was signed by Pacheco and duly notarized, that is, on September 15, 2002.  If this date, and not January 14, 2003, were considered to be the date upon which the factual predicate was discovered, then petitioner's motion would be time-barred even under a Section 2244(d)(1)(D) scrutiny.  The court acknowledges that respondent makes mention of this earlier date in his brief (#31 at 4), but offers no argument that it should in fact be the reference date used by the court.  Because the court has no way of ascertaining when and in what manner Pacheco mailed the first affidavit to petitioner, nor can it deduce how long it took for the affidavit to travel through the state prison's various mail systems, the court has no choice but to accept petitioner's sworn attestation as to the date he received the first affidavit.

Lastly, the court stresses that its consideration of petitioner's motion is limited to its timeliness under Section 2244(d)(1)(D).  It offers no conclusions as to the credibility of the witnesses' recantation or to the viability of petitioner's

claim of either a *Brady* violation or his actual innocence.  This decision also does not address petitioner's repeated assumptions that the judges who reviewed his case or the cases of any of his co-defendants should automatically and *sua sponte* recuse themselves from any further proceedings on his behalf.

### IV. Ruling

For all the above reasons, the Court RULES that ground four of Petitioner's Petition for Writ of Habeas Corpus is not time-barred.

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

March 10, 2008.