UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

LUIS RIVERA,                    )

        Petitioner;   )

R                               )        Civil Action No. 04-12717-RGS
    v.

DAVID NOLAN,                    )

        Respondent:   )


## PETITIONER'S TRAVERSE TO THE RESPONDENT'S
## MEMORANDUM OF LAW IN OPPOSITION TO
## PETITION FOR WRIT OF HABEAS CORPUS

The Petitioner, Luis Rivera pro-se (hereinafter "Rivera" or

"Petitioner"), submits his timely traverse pursuant to Habeas rule 5 of

the Rules Governing § 2254 Cases, as interpreted in, McBride v. Sharpe,

25 F.3d 962, 970 n.9 (11th. Cir.) cert. denied, 513 U.S. 990 (1994).


Petitioner, proffers the instant traverse to identify and define the

respondent's erroneous and malafide presentation of the facts and law as

presented in the Respondent's Memorandum of Law in Opposition to Petition

for writ of Habeas Corpus. The Petitioner would contest and contend the

the presentations of fact and law where their presentation is not

substantiated or presented as conclusion without contributing authority.


Where the Respondent denigrates the affidavits and other evidence

offered by Rivera, such evidence is allowed and encouraged such evidence

to supplement the record. see also; Schlup v. Delo, 513 U.S. 298, 308-10

& n. 18 (1995) (approving discussing petitioner's request to "supplement
the record" - and thereby "buttress his claims of innocence" in support
"manifest miscarriage of justice" exception to successive petition defense.
Herrera v. Collins, 506 U.S. 390, 445 (1993) (Blackmun, J. dissenting on
other grounds) ("It is common to rely on affidavits at the
preliminary-consideration stage of the habeas proceeding.")

It was in, Napue v. Illinois, 360 U.S. 264 (1959), the Supreme Court
held that the "failure of the prosecutor to correct the testimony of the
witness which he knew to be false denied the petitioner due process of law
in violation the Fourteenth Amendment to the Constitution of the United
States." This principle applies to testimony involving the credibility of
witness." Id. at 269. A few years later in Brady v. Maryland, 373 U.S. at
87, the Supreme Court held "that the suppression by the prosecution of
evidence favorable to the accused upon request violates due process where
the evidence is material either to guilt or to punishment, irrespective
of the good faith or bad faith of the prosecution.

The Supreme Court subsequently held that "evidence affecting credibility
falls within the Brady rule." Giglio v. United States, 405 U.S. at 154.
The purpose of the Brady rule is "to ensure that a miscarriage of justice
does not occur" and that the defendant receives a fair trial. United States
v. Bagley, 473 U.S. at 675. And at 682, the Bagley court stated "evidence
is material only if there is a reasonable probability that, had the evidence
been disclosed to the defense, the result of the proceeding would have been
different.

Our First Circuit assessed a Brady claim [to] discern whether [he] had shown the three components of a Brady violation: "the evidence at issue must be favorable to the accused, either because exculpatory, or because its impeaching; that the evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued." Moreno-Morales v. United States, 334 F.3d 140 (1st. Cir. 2003) quoting Strickler v. Green, 527 U.S. 263, 281-82 (1999). Rivera contends such claim herein as the prosecutor did not fully or accurately lay out for the jury the terms of the cooperation agreement between Pacheco, and the Commonwealth. The terms of the written agreement were unquestionably vague, but the fact an agreement existed was not presented before [Rivera's] jury. (Tr. 6:152 1/ In codefendant Rebello's evidentiary hearing; the trial judge noted that Pacheco rejected an offer of a plea to murder in the second degree before he testified in any of the trials (Ex.#10 pages 78, & 136-37) "Another piece of evidence the jurors never heard in any of the trials."

Moreover, this does nothing to change the fact that the prosecution's promise of a benefit assured Pacheco that at a minimum he would be sentenced on nothing more than the second degree murder. If anything, the fact that Pacheco rejected the initial offer powerfully suggests that he expected an even greater benefit after testifying, an expectation that turned out to be well founded, when the first degree murder indictments against him were dismissed. "The state violates a criminal defendant's right to due process of law when, although not soliciting false evidence, it allows false evidence to go uncorrected when it appears." Hayes v. Brown, 399 F.3d 972

-4-

(1st. Cir. 2004). In either case, knowingly or failing to correct the perjury, "Napue forbids the knowing presentation of false evidence by the state in a criminal trial, whether through direct presentation or through covert subornation of perjury." Id.

In Banks v. Dretke, 540 U.S. 668 (2004) "[S]tate persisted in hiding [prosecution witness'] informant status and misleadingly represented that it had complied in full with Brady disclosure obligations" and prosecutors failed to correct the witness' "misrepresentations of his dealings with police "in testimony at guilt and penalty phases of trial;" "When police and prosecutors conceal significant exculpatory or impeaching material in state's possession, it is ordinarily incumbent on the state to set the record straight."

It is firmly established that a conviction obtained through use of false evidence, known to be such by the state, falls under the Fourteenth Amendment, Napue v. Illinois, 360 U.S. 264, 269 (1959); Mooney v. Holohan, 264 U.S. 103, 112 (1935) ("A due process violation occurs if the prosecution used evidence that it knew or should have known was false "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Agurs, 427 U.S. at 103. accord Mastracchio v. Vose, 274 F.3d 590, 601 (1st. Cir. 2001). For the bare fact that the Commonwealth failed to present to the jury the offer to Pacheco of the lesser charge to his indictment for First degree murder, is both exculpatory and impeachable.

Indeed, Rivera points out to this court that the prosecutor's arguing

to the jury in summation that "its up to the court to decide" [Pacheco's]
guilt or innocence was misleading in view of the existence of the plea offer
/ agreement and deprived Rivera of his right to due process and a fair trial.
Moreover, because of Pacheco's inducement to testify was not before Rivera's
jury, the error extended to Rivera's direct appeal and Motion for New Trial.
see Commonwealth v. Hill, 432 Mass. 704, 711-14 (2000) quoting Giglio v.
U.S., 405 U.S. 150, 155 (1972).

In Hill, [the] new trial was granted where Commonwealth failed to
disclose agreement with key prosecution witness concerning the disposition
of charges, and permitted the witness to mislead the jury of his sentencing
expectations, a motive for testifying. Much the same occurrence was resolved
in, Jenkins v. Artuz, 294 F.3d 284 (2nd. Cir. 2002) Where "prosecutor failed
to correct witness' perjurious denial of deal for testimony, and prosecutor
exacerbated problem by using redirect examination to give false impression
that prosecutor's own lack of involvement in arranging deal signified that
no such deal had been made by other prosecutor." Again in, Napue, "[h]olding
that when a prosecutor failed to correct testimony he knew to be false,
petitioner's due process rights were infringed ... [r]equired reversal of
his conviction where the prosecutor failed to correct a witness' denial
of receiving promises of leniency in exchange for his testimony, knowing
it was false, even though the prosecutor had not himself solicited the
falsity." Id. 360 U.S. at 269-71.

---

[4] 28 USC § 2254 (d)(6) as interpreted in Williams v. Taylor, 529 U.S. 420
(2000). interpreting the "failure to devolop" clause of §2254 (e)(2) as
requiring fault would not render a nullity of 28 USC 2254(e)(2)(ii) - which
allows a hearing on an undeveloped claim of, among other things, the factual
predicate of the claim which could not have been previously discovered
through "due diligence" - since the latter is concerned with whether the
claim could have been developed, rather than whether the petitioner
diligently attempted to do so.

## AFFIDAVIT OF FRANCIS PABON

Comments of his affidavit is relegated to a footnote in the
Commonwealth's Memorandum (page 11 fn. #5), the Commonwealth notes that,
"[t]hese statements are, inadmissible hearsay which cannot form the basis
for habeas relief." The Commonwealth mistakenly forms this conclusion as,
Habeas Rule 7, Rules of 2254 cases, "contemplates a relaxed application
of hearsay, best evidence, authentication and other evidentiary rules under
the Federal Rules of Evidence. As to the veracity of Mr. Pabon's statements,
there are only minor issues of contention between his affidavit and those
of Mr. Pacheco. Those discrepancies may be attributed to the same lack of
intelligent articulation existing within the Pacheco documents themselves.
This does not discredit them on merit or veracity rather they indicate the
inarticulation and the lack of education of Mr. Pacheco.

## AFFIDAVIT OF JOSE PACHECO

Mr. Pacheco did attest that he had lied as asserted by the Commonwealth
(page 12 & fn. #6). In the confusion of the redundant admissions of lying
about his trial testimony and his statement to police. Rivera, would refer
the court to Pacheco's testimony (Ex. #10) at page 46. Pacheco attempts
to articulate the proponent's use of non-verbal communication and innocuous
innuendo to convey the offers of cooperation. The same method was proffered
as concerns the coaching for the testimony. This would begin with leading
statements projected as questions and conclude with cheerleading statements
like "Just do the right thing." The court is well aware of this type of
communication in, U.S. v. Walls, 225 F.3d 858, 862 (7th. Cir. 2000) ("It

-7-

is well established that consent may be manifested in a non-verbal as well
as verbal manner."); Gomes v. Fair, 738 F.2d 517 (1st. Cir. 1984) "The court
attributed the "non-verbal signs of communication" [738 F.2d at 520] as
a valid means of communication. "Consent may be supplied by non-verbal
conduct as well." U.S. v. Vasquez-Lozano, 2008 U.S. Dist. Lexis 27099 quoting
State v. Jones, 356 F.3d 529, 534 (4th. Cir. 2004). And it was this court
that recognized non-verbal communication as valid when it granted suppression
of Osorio's non-verbal admission of possession of a recovered gun in, U.S.
Osorio, 877 F. Supp. 771 (1994). This court also accredited plaintiff -
Ms. Ayer, as follows; "(5) she "obviously demonstrates the capacity for
organizing and communicating detailed information in a clear and concise
non-verbal manner." Ayer v. Liberty Life Assur. Co., 382 F. Supp. 2d. 162
(2005).

If Ms. Ayre a layperson, could so communicate, one can imagine the
ability of a professional communicator, a revered trial and criminal
attorney. Whose very art is to convince jurors using body language, facial
sincerity, and refined techniques, all to communicate their client's position
to the jury. Should that revered counselor advocates for the Government
then his or her reverence is enhanced. Especially in the eyes of an
inarticulate and uneducated witness who becomes convinced without specific
written or verbal commitments. That would satisfy the dictionary definition
of "inducement".

"The word "inducement" is the bugbear. ...[A] motive or consideration
that leads one to action" according to Websters Third Intl. Dictionary at
1154 - is a broader and more amorphous term. Unless its considered

-8-

superfluity it must mean something different from promise or reward. U.S.
v. Buendo, 1988 U.S. Dist. Lexis 18245. and continues, "[t]he long list
of government witrnesses submitted in camera include[s] persons who were
told that it was in their "best interest" to cooperate, that they were not
targets of the investigation in light of their minor roles, that there was
no intent on the part of the government to prosecute them ... In other cases
the government has made offers to enter into plea agreements which have
neither been accepted or finalized."

A statement by a witness that he or she has a minor role and is not
subject to investigation or a target for potential prosecution is obviously
an inducement, and equally obviously intended to be an inducement, to
cooperate and give testimony. This construction of the term "inducement"
may, in some cases, complicate the investigative process somewhat for the
government. On the other hand, any other interpretation of the term would
do violence both to the English language and to the manifestly inferable
intent of the rule makers. ... Moreover, such information would be highly
useful to defense counsel and would clearly be brought out on cross
examination as tending to impeach the witness.

Mass.R.Cr.P. Rule 14 (ix) Disclosure of all promises; rewards and inducements
made to witnesses the party intends to present at trial. Mass.R.Prof.C.
3:4 (b) falsify evidence, counsel or assist a witness to testify falsely,
or offer an inducement to a witness that is prohibited by law.

## ASSESSING THE REQUIRED PREJUDICE, 28 USC §2254 (d)(1).

Under this Court's local rules, when an incarcerated plaintiff commences
an action pro-se and in forma pauperis, the magistrate judge is directed
to conduct a preliminary review. LR 4:3(d)(2). In conducting that review,
the Court construes pro-se pleadings liberally, however inartfully pleaded.
see <u>Erikson v. Pardus,</u>  U.S.  , 127 S.Ct. 2197, 2200, 167 L Ed2d 1081
(2007) (following <u>Estelle v. Gamble,</u> 429 U.S. 97, 106 S.Ct. 285 (1976).

"The policy behind affording pro-se plaintiffs liberal interpretation is
that if they present sufficient facts, the Court may intuit the correct
cause of action." <u>Castro v. United States,</u> 540 U.S. 375, 381 (2003).

28 USC § 2254 (d)(1) "... was based on a (sic) unreasonable
determination of the facts in light of evidence presented in the state court
proceeding." This is categorically the underlying premise to the claims
herein asserted. In, <u>William v. Taylor,</u> 529 U.S. 362 (2000), the Court
appears to compel deference to state court decisions. Although this premise
is contentious with the traditions and prevailing interpretations of Article
III of the U.S. Constitution. Petitioner posits that in accordance with,
<u>Wiggins v. Smith,</u> 539 U.S. 510 (2003), as well as in, <u>Roe v. Flores-Ortega,</u>
528 U.S. 470 (2000) the petitioner's application under "clearly established"
Supreme Court law and the continent requirement of "unreasonable application"
criteria are valid. "While the ground between criteria entailed between
"clearly established" and unreasonable application" may be murkey, it makes
sense to regard the standard governing this case as clearly established
by this court. We have a number of decisions dealing with threats of the

fundamental fairness of a criminal trial posed by conditions in (or

originating in) the courtroom ... The Court's intent to adopt a standard

at this general and comprehensive level could have not be much clearer."

Id. at 657, Carey v. Musladin, 127 S.St. 649, 656 (2006).

> A state court judgment is 'contrary to clearly
> established law' if either (1) the state court applied
> a rule that contradicts law set forth in a Supreme
> Court case, or (2) the state court confronts a set
> of facts that is materially indistinguishable from
> the facts in a Supreme Court case but reach an
> opposite result as the Supreme Court.

Id. at 657, Carey v. Musladin, supra; Williams v. Taylor, supra.


"A state court judgment is an unreasonable application of clearly

established law if it applies the Supreme Court's precedent's to a set of

facts in not merely an erroneous but an unreasonable manner." McCambridge

v. Hall, 303 F.3d 24, 36 (1st. Cir. 2002) (en banc).


Rivera would now posit his assertion of the prejudice factors in

conjunction with his earlier assertions. Because Pacheco's credibility was

the central issue in the trial it was critical that the jurors be accurately

informed regarding any motive Pacheco might have to falsify evidence.

Insomuch as the jury was not adequately appraised of the fact that the

prosecutor committed the Commonwealth to provide Pacheco with a tangible

benefit in exchange for his testimony that could be nothing less than

reduction of the First-Degree Murder indictment to Murder in the Second

Degree. Reiterating the Strickler assessments of a Brady claim as "(1) the

evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; that the evidence must have been

suppressed by the state, either willfully of inadvertently; and that prejudge must have insued." The error seems obvious along with the prejudice.

It is established as matter of record that the knowledge of the plea offer was not fairly presented to the Rivera jury. neither did the jurors learn of the bail agreement, the written agreement of "consideration" or any other incentive. In fact, the error was compounded when the prosecutor commented in his closing argument that Pacheco's fate would be decided by the courts. these omissions of fact offend the constitutional principles clearly established in the Supreme Court's decision in, Giglio supra.

The risk that a conviction was brought about by the government's use of perjury goes to the concerns about fairness of the trial that animated Kyle. Obtaining a conviction by presenting testimony known to be perjured "is inconsistent with the rudimentary demands of justice" Mooney v. Holohan, 295 U.S. 103, 112 (1935); accord Giglio v. U.S., 405 U.S. 150, 153 (1972). In Napue v. Illinois, 360 U.S. 264 (1959) a pre-Brady case, the Supreme Court said a new trial is required if "the false testimony could ... in any reasonable likelihood have affected the judgment of the jury." 360 U.S. at 271.

It is interesting that the court noted in Bagley [437 U.S. 263, 280-81 (1999)] "that the [standard] had earlier been stated as a branch of the harmless error test, but it may as easily have been stated [as a] materiality standard." Id. 437 U.S. at 679. Several recent decisions about Brady errors which did not involve the use of perjured evidence continue

RECEIVED IN OFFICE OF
ROBERT B. COLLINGS
U.S. MAGISTRATE JUDGE

JUL  09  2008

UNITED STATES DISTRICT COURT
BOSTON, MASSACHUSETTS

Luis Rivera
P.O.Box 43
Norfolk, MA 02056-0043

July 8, 2008

Robert B. Collings,
Magistrate Judge, Suite 7420
John Joseph Moakley U.S. Cthse.
1 Courthouse Way
Boston, MA 02210

Clerk:

    Please find the enclosed Motion and Traverse and docket expeditiously.
Thank You for your time and effort.

Respectfully:

Luis Rivera, pro-se